346 So.2d 153 (1977)
E. L. HENRY et al.
v.
Hon. Edwin W. EDWARDS, Governor of the State of Louisiana.
No. 59231
Supreme Court of Louisiana.
March 24, 1977.
Rehearing Denied April 12, 1977.
*156 Frank P. Simoneaux, Baton Rouge, for plaintiffs-appellants.
William D. Brown, Brown, Wicker & Lee, Monroe, Camille F. Gravel, Jr., Gravel, Roy & Burnes, Alexandria, Michael S. Baer, III, Baton Rouge, for defendant-appellee.
MARCUS, Justice.
This matter arises out of a suit for a declaratory judgment. At issue is whether the Governor had the constitutional authority to veto certain provisions of the General Appropriation Bill for the fiscal year 1976-77 and whether the vetoed provisions were properly included in the bill by the legislature. The trial judge held that the Governor improperly exercised the "line item" veto power conferred by La.Const. art. 4, § 5(G)[1] and that eleven of the twelve provisions vetoed were unconstitutional in that they constituted matter not properly included in a general appropriation bill. Plaintiffs have perfected this appeal from the decision of the lower court which was in some respects adverse to their claims. La. Const. art. 5, § 5(D)(1).
On July 16, 1976, the Louisiana Legislature passed a General Appropriation Bill and delivered it to the Governor for his consideration in accordance with La.Const. art. 3, § 17(A). On July 17, 1976, the Governor signed the bill but vetoed twelve provisions thereof and returned it to the legislature for further consideration.[2] The Governor's veto message indicated that he considered the disapproved provisions to be substantive law improperly incorporated in the appropriation bill in contravention of La.Const. art. 3, § 16(C), citing as authority for his vetoes La.Const. art. 4, § 5(G). Each of the Governor's vetoes was sustained by the Senate. Plaintiffs, believing the vetoes to be unconstitutional, instituted this action for a declaratory judgment.
The issues presented for our consideration here do not involve general legislation bills or what may properly be included therein. Rather, they concern executive and legislation actions with respect to a *157 general appropriation bill, a particular type of legislation which is specifically addressed in La.Const. art. 3, § 16(C) and which differs in nature and scope from other legislative pronouncements.
La.Const. art. 3, § 16(C) directs:
The general appropriation bill shall be itemized and shall contain only appropriations for the ordinary expenses of government, public charities, pensions, and the public debt or interest thereon. (Emphasis added.)
La.Const. art. 4, § 5(G) provides in pertinent part:
. . . [T]he governor may veto any line item in an appropriation bill. Any item vetoed shall be void unless the veto is overridden as prescribed for the passage of a bill over a veto. (Emphasis added.)
The term "item" as it is used in these provisions is not defined in the constitution. It is generally accepted, however, that when used in reference to an appropriation bill, the word "item" signifies a sum of money dedicated to a specific purpose, a separate fiscal unit.[3]
In our view, art. 3, § 16(C) clearly limits the content of an appropriation bill to items of appropriation of money. However, inherent in the power of appropriation is the power to specify how the money shall be spent. Therefore, in addition to distinct "items" of appropriation, the legislature may include in an appropriation bill qualifications, conditions, limitations or restrictions on the expenditure of funds which would not be dealt with more properly in a separate bill. When proper conditions or limitations are inserted in an appropriation bill, the governor may not veto them without vetoing the item of expenditure which they modify.[4] Otherwise, by striking these provisions but allowing the money "item" of expenditure to stand, the Governor would be able to alter and thus, in fact, to legislate by creating a new "item" of appropriation wholly different in nature and purpose from that originated in the legislature. Inasmuch as a gubernatorial veto can be overridden only by a vote of two-thirds of the members of each house, the legislature would thereby be deprived of its constitutional right to enact an appropriation bill composed of items of its own choosing by majority vote. La.Const. art. 3, §§ 15(G) and 18(B). Moreover, the Governor would be arrogating to himself the power of appropriation notwithstanding that our constitution provides that the legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives. La.Const. art. 3, § 1(A). We cannot sanction a result so clearly violative of the constitutional prerogative of the legislature. Accordingly, we hold that, if the Governor wishes to disapprove of conditions or limitations legitimately included in an appropriation bill, he must veto not only the conditions or limitations but also the money "item" to which they are connected.
Just as the Governor may not use his item-veto power to usurp constitutional *158 powers conferred on the legislature, neither can the legislature deprive the Governor of the constitutional powers conferred on him as the chief executive officer of the state by including in a general appropriation bill matters more properly enacted in separate legislation. The Governor's constitutional power to veto bills of general legislation (La.Const. art. 3, § 18) cannot be abridged by the careful placement of such measures in a general appropriation bill, thereby forcing the Governor to choose between approving unacceptable substantive legislation or vetoing "items" of expenditure essential to the operation of government. The legislature cannot by location of a bill give it immunity from executive veto. Nor can it circumvent the Governor's veto power over substantive legislation by artfully drafting general law measures so that they appear to be true conditions or limitations on an item of appropriation. Otherwise, the legislature would be permitted to impair the constitutional responsibilities and functions of a co-equal branch of government in contravention of the separation of powers doctrine embodied in La.Const. art. 2, §§ 1 and 2. We are no more willing to allow the legislature to use its appropriation power to infringe on the Governor's constitutional right to veto matters of substantive legislation than we were to allow the Governor to encroach on the constitutional powers of the legislature. In order to avoid this result, we hold that, when the legislature inserts inappropriate provisions in a general appropriation bill, such provisions must be treated as "items" for purposes of the Governor's item veto power over general appropriation bills.[5]
The distinction between what constitutes a condition or limitation properly included in a general appropriation bill and what amounts to a provision which is essentially a matter of general legislation more appropriately dealt with in a separate enactment appears, on first consideration, to be difficult to draw. However, this need not be the case if the legislative and executive branches of the government adhere to the spirit of the constitution, each exercising its respective powers with due deference for the constitutional prerogatives of the other. La.Const. art. 3, § 16(C) directs the legislature to pass an "itemized" appropriation bill, essentially a budgetary schedule of distinct fiscal units. The Governor's corollary power to veto the "items" of expenditure included therein casts further light on what was contemplated for insertion in the general appropriation bill. These provisions were never intended to hamstring the legislature in its legitimate efforts to control the purse strings of government. On the other hand, legislative control cannot be exercised in such a manner as to encumber the general appropriation bill with veto-proof "logrolling measures," special interest provisions which could not succeed if separately enacted, or "riders," substantive pieces of legislation incorporated in a bill to insure passage without veto. It is not enough that a provision be related to the institution or agency to which funds are appropriated. Conditions and limitations properly included in an appropriation bill must exhibit such a connexity with money items of appropriation that they logically belong in a schedule of expenditures. We conclude, as did the trial judge, that the ultimate test is one of appropriateness.
With these guidelines in mind, we turn to a consideration of the provisions vetoed in the instant case. *159 Section 14 of the preamble to Act No. 17 provided as follows: In our view, the vetoed provision is strictly a matter of general law which should have been enacted as a separate bill. Inasmuch as it was included in the general appropriation bill, it must be treated as an item and therefore was subject to veto by the Governor.

*160 
The provision vetoed here is in no way a condition of limitation on the expenditure of money. It constitutes substantive legislation which could not be shielded from gubernatorial veto by placement in the appropriation bill.

The Governor's veto power was improperly exercised in this instance. The vetoed provision sets forth a condition which must be met before funds may be disbursed. The language does not create substantive law nor does it relate to a special interest. The matter exhibits a connexity with the expenditure of funds which renders it appropriate for placement in an appropriation bill.[6] Therefore, the Governor could not *161 veto this condition without vetoing the money "item" itself.
Inasmuch as the instant veto was not exercised in compliance with the constitution, it was ineffective and a nullity. The provision thus became law in accordance with La.Const. art. 3, § 18(A).

The language vetoed in this case constituted a qualification appropriately included in the general appropriation bill. It deals with a formula for distribution of funds appropriated for a specific purpose and is clearly a matter of budgetary concern. Therefore, the Governor exceeded his item veto power by striking this qualification without its attendant appropriation. In the absence of an effective veto, the provision became law as provided in La.Const. art. 3, § 18(A).
*162 
Veto number five excised a provision calling for legislative review of monies spent and of prisoner transfers. These directives do not exhibit such a connexity with the appropriation of funds that they logically belong in a schedule of expenditures. Provisions for legislative oversight over the activities of certain governmental departments could readily be made the subject of general legislation. The Governor cannot be deprived of his right to veto such legislation.
Vetoes six and seven constitute special interest legislation aimed at accomplishing a purpose independent of the appropriation of funds. Accordingly, we decline to nullify these vetoes.

*163 
This provision is a matter of substantive legislation bearing no relationship to the expenditure of funds. It was properly subject to the Governor's veto power.
 This provision dealing with the transfer of persons convicted of specified felonies and with notification of transfers to authorities of selected parishes is clearly a matter of general legislation. It does not condition or limit the expenditure of funds in any way. Hence, this provision was subject to veto by the Governor.
*164 While the stricken provision is couched in language suggestive of a condition or limitation, its essential purpose is to insure that equipment purchased by the state meets certain safety standards. This concern is more appropriately addressed in general legislation since it is a substantive expression of state policy on safety. The provision is not directed to the expenditure of funds in a budgetary sense.
 The language vetoed here embraces several subjects. The initial directive that funds be expended in accordance with law is an appropriate qualification for inclusion in an appropriation bill and is not subject to veto. Hence, the provision became law in accordance with La.Const. art. 3, § 18(A).
The second provision constitutes a dedication for an indefinite period of time of all funds collected in connection with parking on the campuses of state universities. It is not a specific appropriation for a given year and would be more appropriately enacted as separate legislation; therefore, the provision was subject to veto. We reach the same conclusion respecting the third subject addressed. This provision has a purpose independent of the disbursement of funds, i. e., to discourage the advocation of the overthrow of government. This amounts to an expression of policy unrelated to the budget for any particular year. Hence, it is more in the nature of a general law and therefore subject to gubernatorial veto.
*165 This provision constitutes a policy directive wholly unrelated to the expenditure of appropriated funds. As such, it was subject to the Governor's veto.
In view of our disposition of the foregoing, we find it unnecessary to address the constitutionality vei non of the language in the vetoed provisions.

DECREE
For the reasons assigned, the judgment of the district court is reversed. Vetoes numbers 1, 2, 5, 6, 7, 8, 9, 10 and 12 are declared to have been validly made.
Vetoes numbers 3 and 4 are declared null and void.
Veto number 11 is declared null and void as to the first provision vetoed. The Governor's veto power with respect to the other two provisions is declared to have been validly exercised.
DIXON, J., concurs only in the part of the decree which sustains gubernatorial veto, which was properly exercised in each case.
DENNIS, J., concurs in part and dissents in part and assigns reasons.
DENNIS, Justice, concurring in part and dissenting in part.
I concur in the majority's decision that the governor constitutionally may not veto less than all of an item of an appropriation bill.
I respectfully dissent from the majority's view that the governor may veto non-monetary provisions invalidly contained in the general appropriations bill. The constitution authorizes the chief executive officer to veto any line item in an appropriation bill, La.Const. Art. 4, § 5(G), and to veto the entirety of other bills, La.Const. Art. 3, § 18(B). Unlawfully attempted non-monetary legislation placed in an appropriation bill does not logically fit within either of these categories. In order to force it into one of the classifications the majority opinion inventively held "that when the Legislature inserts inappropriate provisions in a general appropriation bill, such provisions must be treated as `items' for purposes of the governor's item veto power over general appropriation bills." But in doing so, the majority disregarded its own definition of a line item, viz., "a sum of money dedicated to a specific purpose, a separate fiscal unit," because none of the "inappropriate provisions" contains an appropriation of money.
*166 Perhaps the Court's decision today strikes a workable compromise of a troublesome conflict between our co-equal branches of government. But in my opinion it has been achieved at the cost of doing violence to the constitution, raising several grave legal questions, and perhaps denigrating the power of the judiciary. By subjecting nonmonetary "items" in the general appropriations bill to the executive veto, the Court has modified the balance of constitutional power between the governor and the legislature without consent of the people. In the process, its opinion creates doubts where none existed before. After today's decision may the courts resurrect and declare constitutional material the governor has declared a non-monetary "item" and vetoed on this basis? May the judiciary declare unconstitutional a non-monetary "item," if it has not been vetoed, or if it has been vetoed but subsequently approved by two-thirds of each house of the legislature? May this Court, in deciding whether material was properly included within the general appropriation bill, disregard completely and give no weight to the governor's decision to exercise or withhold his veto? I believe the answer to each of these questions must be yes. Otherwise, the chief executive officer would have been given the right to exercise the judicial function of declaring legislative action unconstitutional in violation of the separation of powers and in derogation of the judicial authority of the courts. However, the majority opinion stops short of allaying these doubts, leaving for another day resolution of the issue of whether this Court has untrammelled authority to decide whether the type legislation involved here is constitutional and effective.
I think this Court should have declared unconstitutional the "inappropriate provisions" of the general appropriations bill rather than approving the governor's vetoes of them.
NOTES
[1] All constitutional provisions referred to herein are embodied in the 1974 Louisiana Constitution.
[2] When signed by the Governor, the bill became law and is designated as Act No. 17 of the Regular Session of the 1976 Louisiana Legislature. The act contains the general appropriations for the fiscal year beginning July 1, 1976 and ending June 30, 1977.
[3] See cases cited in 18 Drake L.Rev. 245 (1969) and Beckman, The Item Veto Power of the Executive, 31 Temp.L.Q. 27 (1957). This interpretation comports with that placed on the term "item" by our own legislature. Section 16 of the preamble to the 1976 General Appropriation Bill provides in pertinent part:

In the event the governor shall veto any line item of expenditure and such veto shall be upheld by the legislature, the Division of Administration shall withhold from the agency's funds an amount equal to the veto. (Emphasis added.)
[4] Even in states with constitutional veto provisions broader than our own, proper conditions and limitations on an item of expenditure have been held not subject to veto unless the money amount is also disapproved. Jessen Associates, Inc. v. Bullock, 531 S.W.2d 593 (Tex. 1976); State ex rel. Sundby v. Adamany, 71 Wis.2d 118, 237 N.W.2d 910 (1976); Welden v. Ray, 229 N.W.2d 706 (Iowa 1975); State ex rel. Sego v. Kirkpatrick, 86 N.M. 359, 524 P.2d 975 (1974); Cason v. Bond, 495 S.W.2d 385 (Mo. 1973).
[5] Most of the cases cited by plaintiffs in support of the proposition that the Governor can never veto language provisions in a general appropriation bill address the attempt to veto legitimate conditions or limitations to an appropriation rather than substantive legislation. Other cases do not indicate that the state constitutions of the respective states involved prohibit the inclusion of general legislation in an appropriation bill.
[6] We express no opinion as to whether the appropriation of a lump sum to an agency with the right reserved to the legislature to later approve a particularized budget satisfied the itemization requirement of La.Const. art. 3, § 16(C) or whether this practice may violate that provision by denying the Governor the opportunity to see and consider the subsequently budgeted expenditures. Even assuming that the provision is unconstitutional, it nevertheless constitutes a condition or limitation attached to an item of expenditure which is appropriate in a budgetary sense. Accordingly, the Governor may not veto the condition or limitation without vetoing the money item of appropriation.