Milo COLTON, Leo P. Miller, Josephine Gruhn, Johnie Hammond, Elaine Baxter, Sue Mullins, Julia Gentleman, Janet A. Carl and Kay Chapman, Individually and as Members of the 70th General Assembly of Iowa, Appellees,

v.

Terry E. BRANSTAD, Governor of the State of Iowa, Appellant.

No. 84–1011.

Supreme Court of Iowa.

July 31, 1985.

Thomas J. Miller, Atty. Gen., and Julie F. Pottorff, Asst. Atty. Gen., for appellant.

Gerald H. Grask and Barbara A. Buhr of Neiman, Neiman, Stone & Spellman, Des Moines, for appellees.

REYNOLDSON, Chief Justice.

Plaintiffs, nine members of the 70th General Assembly, 1983 session, filed this action seeking a declaration that the action of defendant Governor Terry E. Branstad in item vetoing a section of an appropriation bill was unconstitutional and therefore void. After defendant answered, trial court granted plaintiffs' motion for summary judgment. We reverse and remand.

The facts in this controversy are undisputed. In its 1983 session the legislature enacted H.F.613, entitled:

> AN ACT relating to the funding of state agencies for designated service programs including health programs, specialized child health service programs, substance abuse programs, civil rights, veterans' services, and programs for minority, elderly, and disadvantaged persons for the fiscal year beginning July 1, 1983, and ending June 30, 1984.

See 1983 Iowa Acts ch. 206. Only two sections of this bill are relevant here.

Section 4(6) of H.F.613 appropriates $1,164,699 in state funds to the state department of health for "Personal and family health services," for a number of speci-

fied purposes including mobile and regional child health speciality clinics, the childhood cancer diagnostic and treatment network program, rural comprehensive care for hemophilia patients, statewide perinatal programs, and sexual abuse investigations.

Section 12 of the above act includes the following:

> As a condition of the appropriation under section 4, subsection 6, the state department of health shall relinquish to the family planning council of Iowa through the department of health and human services federal dollars appropriated under Title X of the Public Health Service Act and allocated for Lyon, Sioux, Plymouth, Woodbury, Cherokee, Ida, Delaware, Dubuque, Jackson, Washington, Louisa, Henry, Lee, and Des Moines counties in order to permit established local family planning providers to continue services without state involvement.

See 42 U.S.C. §§ 300, 300(a) (1982).

June 13, 1983, the defendant transmitted the bill to the secretary of state, approving it with the exception of the above-quoted portion of section 12. See 1983 Iowa Acts at 633–35. The transmittal letter explained that prior to 1980 the federal government routed all Title X (family planning) funds through the department of health (DOH) to provide for state oversight and administrative control. When certain local planning agencies took exception to this oversight in 1980, DOH "allowed all local planning agencies to opt out of the state administrative program. ... [S]even local agencies pulled out and formed their own Family Planning Council of Iowa (FPCI) to receive and distribute federal Title X funds." In 1982 DOH renewed its three-year federal contract for the program and again provided local agencies an opportunity to opt out of the state program. None did. The transmittal letter further stated that during the first year of the three-year contract, three more local planning agencies decided to join the FPCI. After DOH refused to release them because of the federal contract commitment, these agencies petitioned the legislature and obtained inser-

tion of the section 12 language. This provision, the letter asserts, apparently was designed to give FPCI, rather than DOH, authority to administer federal funds to be distributed to local family planning agencies centered in Sioux City, Dubuque and Burlington.

The defendant assigned the above contractual as well as public policy considerations as his reasons for vetoing the section 12 sentence. He asserted more time was required for dialogue between the local agencies and DOH, that DOH–administered funds concentrated less on urban areas and reached a higher percentage of the poor, and that these and other important health needs had not been fully assessed.

September 23, 1983, plaintiffs filed their petition seeking a declaration that this veto was void. They alleged the quoted section 12 language was a condition upon the section 4(6) appropriation of funds from the state of Iowa to the DOH, that defendant's veto "calls into question the legitimacy of the funds appropriated under House File 613 to the Iowa Department of Health," and injured the plaintiffs by usurping "the Iowa Legislature's inherent power to appropriate public funds and to impose conditions or restrictions upon the purpose or use of the money appropriated." Defendant's answer denied these allegations and requested a declaratory ruling that his action was constitutional and legal.

February 2, 1984, plaintiffs filed a motion for summary judgment, asserting there was no genuine issue of material fact and plaintiffs were entitled to judgment as a matter of law. Defendant's resistance alleged there were genuine issues of material fact, and affirmatively asserted there was no significant relationship between the utilization of federal funds granted DOH under Title X and state funds appropriated to DOH for other purposes. Attached to the resistance were affidavits that supported the following allegations:

> Title X funds are awarded to the Department of Health as a federal grantee for the Iowa State Family Planning Program.

The Iowa State Family Planning Program is administered under the division of Personal and Family Health Services [of DOH].

The salaries of personnel who directly administer the Iowa State Family Planning Program are paid entirely by federal funds under Title X.

No state funds appropriated to the division of Personal and Family Services under section 4, subsection 6, of House File 613 are used for family planning services.

Defendant's trial brief asserted that under Iowa decisions the relationship between the "conditioning language" and the appropriated funds is critical in resolving the validity of the exercise of an item veto. He argued there must be a nexus between the vetoed language and the appropriated state funds in order to successfully challenge the veto.

Trial court filed its ruling on May 17, 1984. It concluded it would be "inappropriate" to receive evidence on the issue whether there was a significant relationship between the state funds appropriated in section 4(6) of H.F.613 and the federal funds referred to in section 12. The court found the section 12 language did not violate the *Brady* "lump-sum" rule noted in *Welden v. Ray*, 229 N.W.2d 706, 714 (Iowa 1975), although this issue was not raised by defendant's resistance or his district court brief. *See People ex rel. State Board of Agriculture v. Brady*, 277 Ill. 124, 115 N.E. 204 (1917). It further found the section 12 sentence did not violate the Iowa Constitution, article III, section 29 (one bill—one subject), another issue not relied on by defendant. The court reasoned that although "section 12 was a separate, severable provision in terms of subject matter, it explicitly made other sections conditional upon its approval ... [and] dicta [in *State ex rel. Turner v. Iowa State Highway Commission*, 186 N.W.2d 141, 153 (Iowa 1971)] indicates that a provision may be determined to be a condition solely on the basis of the 'specific draftsmanship' used in its construction." In this situation, the court concluded, it was "clear that section 12 was drafted to be a condition on the appropriations in section 4, subsection 6," and entered summary judgment for plaintiffs.

June 14, 1984, the defendant filed timely notice of appeal, and we granted his motion for a stay of any obligation to transfer federal funds from the personal and family health services division of the DOH to the FPCI, effective through June 30, 1984.

This controversy presents three issues:

1. Is the controversy moot, and if so, should we nevertheless consider it?

2. Did district court err in rejecting defendant's contention that the case presented a genuine issue of material fact?

3. If the court made no error with respect to the second issue, did it err in holding section 12 of H.F.613 was a valid condition that defendant could not veto?

We address these issues in the above order.

I. *Mootness Issue.*

■ Plaintiffs' brief correctly points out that appropriations under H.F.613 expired June 30, 1984. They assert, nonetheless, that the controversy meets the "public interest" exception to the mootness doctrine, citing *Rush v. Ray*, 332 N.W.2d 325, 326–27 (Iowa 1983). Defendant does not request that we avoid the merits by invoking the mootness doctrine. We agree that in this murky and troublesome area the basic question is of great public importance and likely to recur. The *Rush* two-prong test being met, we proceed to the remaining issues.

II. *Summary Judgment Issue.*

■ The general principles governing summary judgment are well established. Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Iowa R.Civ.P. 237. *Barnhill v. Davis*, 300

N.W.2d 104, 105 (Iowa 1981). The moving party has the burden of demonstrating there is no genuine issue of material fact. *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984). The court is required to view the record in a light most favorable to the party against whom the summary judgment is sought. *Hildenbrand v. Cox*, 369 N.W.2d 411, 413 (Iowa 1985); *Walker Shoe Store v. Howard's Hobby Shop*, 327 N.W.2d 725, 728 (Iowa 1982) ("[S]ummary judgment is not proper if reasonable minds could draw ... different inferences and reach different conclusions [from the undisputed facts].").

Plaintiffs did little to carry their burden to establish there was no genuine issue of material fact. Their motion did not comply with Iowa Rule of Civil Procedure 237(h) by carrying an

> annexed ... separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried, including specific reference to those parts of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits which support such contentions and a memorandum of authorities.

Defendant's affidavits obviously were designed to show there was a question of fact to be resolved as to whether veto of the section 12 language could in any way alter the purposes for which funds appropriated in section 4(6) might be spent.

Plaintiffs, however, conceded defendant's alleged facts in their district court brief.[1] This concession, in our view and in the posture of this dispute, permitted trial court to consider the case as presenting solely a question of law, unencumbered by issues of material fact. It was appropriate, therefore, for the court to consider the substantive issue raised by the motion for summary judgment, and we find no error in this regard.

III. *Substantive Issue.*

The parties' positions on the substantive issue may be stated succinctly. Defendant argues that, to be insulated from item veto, a "condition" on an appropriation must contain language that qualifies or restricts the way in which appropriated money can be spent. Plaintiffs assert that a "condition" is any language of an appropriation bill that is germane to the whole act, labeled as a "condition," and attached as a proviso to any other section or sections.

Our analysis must start with the constitutional power relied on by defendant, and the preliminary determination whether the section 12 language is an "item" as that word appears in the relevant constitutional provision. The 1968 item veto amendment to the Iowa Constitution, article III, section 16, provides:

> The governor may approve appropriation bills in whole or in part, and may disapprove any item of an appropriation bill; and the part approved shall become a law. Any item of an appropriation bill disapproved by the governor shall be returned, with his objections, to the house in which it originated, or shall be deposited by him in the office of the secretary of state in the case of an appropriation bill submitted to the governor for his approval during the last three days of a session of the general assembly, and the procedure in each case shall be the same as provided for other bills. Any such item of an appropriation bill may be enacted into law notwithstanding the governor's objections, in the same manner as provided for other bills.

We first interpreted the above language in *Turner*, 186 N.W.2d 141, where the then governor vetoed the following language in an appropriation bill:

> Sec. 5. The permanent resident engineers' offices presently established by the State Highway Commission shall not be moved from their locations; however, the commission may establish not more

---

1. Plaintiffs make the same concession in their appellate brief: "The Governor's affidavits are not in dispute. The only dispute in this case concerns the legal consequences flowing from undisputed facts." Appellee's Brief at 4.

than two temporary resident engineers' offices within the state as needed.

*Id.* at 143. We rejected the argument that an "item," which of course may be vetoed, must be one which appropriates money, noting that unlike the constitutional language in a number of the other 42 states adopting such an amendment,

[e]ither by circumstance or design, our item veto amendment makes no reference to appropriations "of money" in its provisions which enable a governor to approve appropriation bills in whole or in part, and permits the disapproval of any "item" of an appropriation bill.

*Id.* at 149. Although the section 5 sentence in *Turner* appropriated no funds, this court without dissent held it to be an "item" subject to the governor's veto authority. *Id.* at 149, 152–53.

Other jurisdictions in similar fashion have construed their state constitutions to permit item veto of appropriation bill language that does not, itself, appropriate a sum of money. *See, e.g., Henry v. Edwards,* 346 So.2d 153, 158 (La.1977); *Opinion of the Justices to the House of Representatives,* 384 Mass. 820, 824–25, 425 N.E.2d 750, 753 (1981); *State ex rel. Sego v. Kirkpatrick,* 86 N.M. 359, 365, 524 P.2d 975, 981 (1974); *State ex rel. Sundby v. Adamany,* 71 Wis.2d 118, 128, 237 N.W.2d 910, 916 (1976).

■ Having determined the section 12 sentence may qualify as an "item," we examine whether other legal principles prohibit its veto. If, as asserted by plaintiffs, it legally must be recognized as a condition on the section 4(6) appropriation to DOH, then defendant would be prohibited from vetoing it without also vetoing the appropriation in section 4(6). *Rush v. Ray,* 362 N.W.2d 479, 482 (Iowa 1985); *Welden,* 229 N.W.2d at 710.

An examination of the three cases in which we have construed the item veto amendment discloses a consistent treatment of the term "condition" as used in this context. In *Turner,* 186 N.W.2d at 150, we noted the controverted language in section 5 "did not 'qualify an appropriation'

or 'direct the method of its use' and is in no sense a condition ... which limits the expenditure of any of the funds appropriated" (quoting House File 823). *Welden,* though it held the governor's veto invalid, is consistent with *Turner* in defining a condition as a provision in a bill that limits the use to which an appropriation may be put. 229 N.W.2d at 710. *Rush,* 362 N.W.2d at 482, adopted the same definition with this statement:

The vetoed language created conditions, restricting use of the money to the stated purpose. It is not severable, because upon excision of this language, the rest of the legislation is affected. The appropriated money is no longer required to be used *only* for the stated purpose; it could be used for other purposes. Thus, these are not items which are subject to veto.

(Emphasis in original.)

It is clear from these decisions that the section 12 sentence in issue does not qualify as a condition on the appropriation in section 4(6), as plaintiffs contend. It does not limit or direct the use of that appropriation. The defendant's action was not "an improper veto of a qualification within the meaning of *Welden* ... and *Turner*" as trial court found.

■ Section 12, however, is more appropriately identified as a contingency. *See In re Opinion to the Governor,* 239 So.2d 1, 9 (Fla.1970). It purports to make the section 4(6) appropriation available only in the event that defendant initiates certain other administrative action. A contingency has never been the subject of an item veto case in Iowa.

Although briefs of the parties have not focused on the vetoed language as a contingency, it is well established that appropriations may be made contingent upon matters or events reasonably related to the subject of the appropriation. *See In re Opinion to the Governor,* 239 So.2d at 9 ("Appropriations may constitutionally be made contingent upon matters or events reasonably related to the subject of the

appropriation, but may not be made to depend upon entirely unrelated events."); *State ex rel. Sego v. Kirkpatrick*, 86 N.M. at 370, 524 P.2d at 982 (Legislature may make an appropriation of state funds contingent upon the loss of federal funds presently received by the agency.). Such a contingency for example, is found in section 4(6) of the bill under scrutiny:

> To provide for the contingency that federal funds would not be available to maintain that funding level, there is appropriated from the general fund of the state to the office of the state comptroller for the fiscal year beginning July 1, 1983, and ending June 30, 1984, the sum of seventy-four thousand four hundred fifty (74,450) dollars, or so much thereof as is necessary. The state comptroller, upon receipt of verified amounts of federal funds received by the university of Iowa hospitals and clinics for the programs specified in this paragraph, shall pay to the university of Iowa hospitals and clinics an amount equal to the difference between the amount of the original grant application and the amount of the grant as approved by the United States department of health and human services. Any funds remaining from this appropriation shall revert to the state general fund on June 30, 1984.

The contingency under scrutiny here, however, is unlike that above quoted. Under the accepted facts in this case, the contingency has no direct or immediate relationship to the programs, the appropriations for which are made contingent upon the prescribed action. In fact, the only apparent nexus is that the appropriation is to DOH and the administrative action sought to be effected would be implemented by DOH.

 This brings us to the basic constitutional considerations that lie at the heart of this controversy. In *Turner*, 186 N.W.2d at 149–53, we held the then governor constitutionally could veto an unrelated item in an appropriation bill, and quoted extensively from *State ex rel. Wis. Tel. Co.*

*v. Henry*, 218 Wis. 302, 309–10, 260 N.W. 486, 490–92 (1935):

> [W]e have concluded for reasons hereinafter stated that the parts which were disapproved by the Governor were not provisos or conditions which were inseparably connected to the appropriation.
>
> ... [T]here is nothing in that [item veto constitutional] provision which warrants the inference or conclusion that the Governor's power of partial veto was not intended to be as coextensive as the Legislature's power to join and enact separable pieces of legislation in an appropriation bill. As the Legislature can do that in this state, there are reasons why the Governor should have a coextensive power of partial veto, to enable him to pass, in the exercise of his quasi legislative function, on each separable piece of legislation or law on its own merits.

On the other hand, in *Rush*, 362 N.W.2d at 482–83, and *Welden*, 229 N.W.2d at 713–14, we held the then governor impermissibly invaded the legislative authority constitutionally vested in the general assembly by selectively striking words and phrases from conditions inextricably linked to an appropriation. A corollary principle is that the legislature, by attaching an unrelated "rider" as a contingency to an appropriation, cannot invade the governor's constitutional power to veto bills of general legislation. This principle is well delineated in *Henry*, 346 So.2d 153, 157–58:

> Just as the Governor may not use his item-veto power to usurp constitutional powers conferred on the legislature, neither can the legislature deprive the Governor of the constitutional powers conferred on him as the chief executive officer of the state by including in a general appropriation bill matters more properly enacted in separate legislation. The Governor's constitutional power to veto bills of general legislation cannot be abridged by the careful placement of such measures in a general appropriation bill, thereby forcing the Governor to choose between approving unacceptable sub-

stantive legislation or vetoing "items" of expenditure essential to the operation of government. The legislature cannot by location of a bill give it immunity from executive veto. Nor can it circumvent the Governor's veto power over substantive legislation by artfully drafting general law measures so that they appear to be true conditions or limitations on an item of appropriation. Otherwise, the legislature would be permitted to impair the constitutional responsibilities and functions of a co-equal branch of government in contravention of the separation of powers doctrine. . . . We are no more willing to allow the legislature to use its appropriation power to infringe on the Governor's constitutional right to veto matters of substantive legislation than we were to allow the Governor to encroach on the constitutional powers of the legislature. In order to avoid this result, we hold that, when the legislature inserts inappropriate provisions in a general appropriation bill, such provisions must be treated as "items" for purposes of the Governor's item veto power over general appropriation bills.

The distinction between what constitutes a condition or limitation properly included in a general appropriation bill and what amounts to a provision which is essentially a matter of general legislation more appropriately dealt with in a separate enactment appears, on first consideration, to be difficult to draw. However, this need not be the case if the legislative and executive branches of the government adhere to the spirit of the constitution, each exercising its respective powers with due deference for the constitutional prerogatives of the other. . . . The Governor's . . . power to veto the "items" of expenditure included [in an itemized appropriation bill] casts further light on what was contemplated for insertion in the general appropriation bill. These provisions were never intended to hamstring the legislature in its legitimate efforts to control the purse strings of government. On the other hand, legislative control cannot be exer-

cised in such a manner as to encumber the general appropriation bill with veto-proof "logrolling measures," special interest provisions which could not succeed if separately enacted, or "riders," substantive pieces of legislation incorporated in a bill to insure passage without veto. It is not enough that a provision be related to the institution or agency to which funds are appropriated. Conditions and limitations properly included in an appropriation bill must exhibit such a connexity with money items of appropriation that they logically belong in a schedule of expenditures.

(Citations omitted.) *See also Opinion of the Justices to the House of Representatives*, 384 Mass. at 826–27, 425 N.E.2d at 754 (quoting with "particular approval" from *Henry*, above); *State ex rel. Sundby v. Adamany*, 71 Wis.2d at 133–34, 237 N.W.2d at 917–18.

We conclude that the sentence included in section 12 of H.F.613 is a "rider," an unrelated substantive piece of legislation incorporated in the appropriation bill, *Henry*, 346 So.2d at 158; *Opinion of the Justices to the House of Representatives*, 384 Mass. at 826, 425 N.E.2d at 754, and was subject to defendant's item veto. We can find no relationship between the appropriation of state funds in section 4(6) of H.F.613 and the administration of federal funding for different purposes that is the subject of the sentence at issue in section 12. *See State ex rel. Brown v. Ferguson*, 32 Ohio St.2d 245, 252, 291 N.E.2d 434, 438 (1972) ("[W]e conclude that those provisions in an appropriation bill which are separate and distinct from other provisions in the same bill, insofar as the subject, purpose, or amount of the appropriation is concerned, are items within the meaning of [the item veto provision] of the Ohio Constitution.").

We are unable to accept the basic rationale presented in the brief filed to support the summary judgment: that the section 12 sentence was germane to the act, made a condition on the appropriation by "specific

draftsmanship," and it was therefore invulnerable to veto.

We are not persuaded that a rider has sufficient relationship to the appropriation to which it is attached simply because it falls within the scope of Iowa Constitution article III, section 29, commonly known as the "one bill—one subject" provision. Section 29 provides:

Acts—one subject—expressed in title. Sec. 29. Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.

This was an original part of the 1857 Constitution. We have construed this provision on many occasions. In *Long v. Board of Supervisors*, 258 Iowa 1278, 1282–83, 142 N.W.2d 378, 381 (1966), we stated that the provision was to be "liberally construed so one act may embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto." It seems apparent that the item veto amendment, adopted 111 years after the "one bill—one subject" constitutional provision, was designed to achieve a goal that could not be reached through the prior provision. In enacting the item veto amendment, Iowa citizens obviously concluded that appropriation bills are by their nature unique, that the one bill—one subject rule could not provide an effective mechanism for balancing proper legislative and executive powers with respect to the state budget, and that the governor should have a larger role in the state budgetary process. *See Opinion of the Justices to the House of Representatives*, 384 Mass. at 823, 425 N.E.2d at 752. We conclude a provision in an appropriation bill may pass muster under the one bill—one subject rule but nevertheless be subject to veto for having insufficient nexus to the accompanying appropriation.

Nor are we convinced the thrust and purpose of the item veto amendment can be frustrated by the simple device of "specific draftsmanship." If so, any unrelated rider could be inserted in an appropriation bill and sheltered by a carefully crafted phrase attaching it to a vital appropriation, thus insulating it from veto.

The rationale advanced to support the summary judgment could be utilized to preclude all exercise of the item veto power. A bill appropriating items A through E could be drafted so that item A would become law only on the contingency that items B through E became law. Under this rationale the bill would become an inseverable whole, impervious to item veto. As long as items B through E were germane, and labeled as required contingencies for the availability of item A, the governor would be required to either veto or sign the entire bill.

The "specific draftsmanship" language in *Turner*, 186 N.W.2d at 153, appears in a discussion of a germaneness issue raised there but not here. It also must be read in the context of the item that was vetoed in that case, relating to moving and establishing engineers' offices. The discussion merely made the point that the provision was in no way linked to the expenditure of the funds appropriated; that had the provision been so linked it could not have been said that the provision was not germane to the general subject matter of the bill itself. *Turner* does not hold that the simple insertion of formula language linking a rider to an appropriation would provide the indispensable nexus to make both a single item for passage or veto.

In summary, we hold the vetoed provision in this case did not have a sufficient relationship with the section 4(6) appropriation to make the two a single item, that the section 12 sentence in issue was a rider, a separable item and legally subject to veto. Trial court erred in granting summary judgment for plaintiff. Because we agree that no fact issue is involved and the question is one of law, we reverse and remand so district court may entertain and grant a

motion for summary judgment for defendant.

REVERSED AND REMANDED.

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I dissent. The major premise articulated by the majority as the basis for its result is that "by attaching an unrelated 'rider' as a contingency to an appropriation, [the legislature] cannot invade the governor's constitutional power to veto bills of general legislation." The primary problem with this formula is that its application requires the assumption that the scope of the governor's veto power is a given when, in fact, this is the very issue before the court. In addition, the stated premise immediately raises two additional questions: (1) When is a "rider" to an appropriation unrelated to the appropriation? and (2) What is a bill of general legislation?

As to the first of these questions, I would submit that, ordinarily, a condition or contingency cannot be considered as "unrelated" to an appropriation when the legislature has established an interrelationship on the face of its enactment. And, as to the second question, I submit that a condition or rider is not a piece of general legislation if it is expressly linked to a particular appropriation item. It is, in the latter instance, an integral part of the appropriation.

I view the constitutional amendment permitting item vetoes as applicable only to those instances where the will of the legislature is not frustrated except as to the item which is vetoed. This is the teaching of *Rush v. Ray*, 362 N.W.2d 479, 482 (Iowa 1985) and *Welden v. Ray*, 229 N.W.2d 706, 710 (Iowa 1975). In the present case, frustration of legislative purpose exists not only in the abrogation of the directives contained in section 12 (the item vetoed), but also in the resulting transformation of section 4(6) from a conditional appropriation to an unconditional appropriation. I do not believe that it was the intent of that

constitutional amendment to grant to either the executive or judicial branch the power to pass judgment upon the bona fides of conditions or contingencies whose purposes are clear on the face of the act. This can only lead to repeated confrontations between the executive and legislative branches of government, which, in turn, will give rise to a string of future court challenges.

For purposes of deciding the present case, I submit that, where a condition placed on an appropriation to an agency of government relates, even inferentially, to a function of that agency, this creates sufficient nexus between the appropriation and the condition that the condition may not be excised by item veto. That is the situation here. I would affirm the district court.