Honorable Roy R. Romer Executive Chambers 136 State Capitol Denver, Colorado 80203-1792
Dear Governor Romer:
I am writing in response to your memorandum dated August 24, 1988 requesting a legal opinion on the constitutionality of certain headnotes and footnotes attached to House Bill 1356, the 1988 general appropriations bill (the "1988 Long Bill"). You ask me to provide some definitive guidance on the question: to what extent may the Colorado General Assembly employ provisions of the 1988 Long Bill to restrict executive expenditure of appropriations?
QUESTION PRESENTED AND CONCLUSION
Whether the 1988 Long Bill contains legislative conditions which are unconstitutional because they intrude upon the executive sphere or violate the constitutional requirement that the Long Bill contain only appropriations?
Yes.
ANALYSIS
a. Passage of the 1988 Long Bill — nature of the controversy.
In preparing this opinion I have relied upon the published version of the 1988 Long Bill as well as your description of the circumstances surrounding passage of the budget. You have also provided me a copy of your veto message to the house of representatives dated June 23, 1988.
In May of this year, the Colorado General Assembly adopted the 1988 Long Bill and forwarded it to you for approval. In addition to making line item appropriations for the expenses of state government during the 1988-89 fiscal year, the 1988 Long Bill contains several pages of narrative headnotes and some 159 distinct footnotes, plus a capital construction budget with an additional eight footnotes.
On June 23, 1988 you wrote the house of representatives stating that you had approved the 1988 Long Bill as a whole, but that you had vetoed one item and commented on several provisions which you believed to present substantial constitutional problems. You identified those provisions presenting constitutional problems by bracketing them, but did not line them out or otherwise attempt to veto those provisions separately from the related line item appropriation. Subsequently, the speaker of the house of representatives and the president of the senate announced their position that your veto, and the accompanying message, were not filed in conformance with the requirements of the Colorado Constitution. They directed that your veto be treated as having no legal effect and that your message not be published as part of the Session Laws. 1988 Colo. Sess. Laws 120. In October, the chairman of the joint budget committee wrote all department executive directors to inform them that the joint budget committee believes all headnotes and footnotes should be followed by the executive branch. This ongoing controversy led you to write me requesting legal advice on the constitutionality of various limitations and conditions on appropriations.
The sheer multitude of headnotes and footnotes presents a practical problem of how to address these multifaceted issues within a limited amount of space. You have not specified any particular conditions about which you request legal advice, but you have provided a copy of the 1988 Long Bill and your veto message specifying the bracketed conditions. I understand that you seek guidance on the general legal principles which apply to this controversy. Therefore, my opinion will focus on selected examples of the 1988 Long Bill provisions which illustrate my analysis.[1]
b. Introduction to recent litigation over the separation ofpowers between legislative and executive branches. In the past fifteen years the Colorado Supreme Court has had several opportunities to address the respective constitutional powers of the legislative and executive branches, particularly with respect to implementation of the annual general appropriations bill. In its decisions resolving disputes between the two branches, the court has delineated several broad principles of constitutional law. In each instance, however, the court has emphasized that issues of separation of powers fall in a twilight area and decisions must be made based upon the circumstances of each specific case. In the absence of any bright line test to decide separation of powers controversies, the legislative and executive branches have been unable by themselves to reach a mutually acceptable compromise on the extent of their respective powers over such matters as: the proper content of Long Bill footnotes; ongoing administration of line item appropriations; executive transfer of funds between appropriations; and legislative participation in administrative decision-making.
Several significant court decisions are referred to throughout my opinion, and are set out below in chronological order for convenient reference. In the opinion they will be referred to in the abbreviated form indicated: MacManus v. Love,179 Colo. 218, 499 P.2d 609 (1972) ("MacManus");Anderson v. Lamm, 195 Colo. 437, 579 P.2d 620 (1978) ("Anderson"); Colorado General Assembly v.Lamm, 700 P.2d 508 (Colo. 1985) ("General AssemblyI"); Colorado General Assembly v. Lamm, 704 P.2d 1371
(Colo. 1985) ("General Assembly II"); andColorado General Assembly v. Lamm, 738 P.2d 1156 (Colo. 1987) ("General Assembly III").
c. The Colorado Constitution separates the legislativepower to enact policy from the executive power toadminister. Article III of the Colorado Constitution[2]
establishes the broad principle that it is the province of the General Assembly to enact policy by legislation and the separate province of the executive branch to see that the laws are faithfully executed. General Assembly II;Anderson. The legislature has plenary power to make appropriations of state funds, subject to constitutional limitations. General Assembly II, 704 P.2d at 1380. This absolute power over appropriations necessarily includes authority to attach conditions to the expenditure of appropriations. Anderson; MacManus. For example, the legislature may condition the expenditure of state funds required to match federal grant funds. Anderson. Expenditures also may be conditioned upon the designation of a specific source of funds to satisfy the appropriation.General Assembly II.
In order to faithfully execute the laws, the executive is charged with administering appropriated funds for programs enacted by the General Assembly. Anderson. Once an appropriation is made, the legislature may not intrude into the executive sphere by interfering with executive administration of the appropriation. Anderson. The legislature may not interfere with executive authority to make "specific staffing and resource allocation decisions," nor may the legislature:
 [A]ttach conditions to a general appropriation bill which purport to reserve to the legislature powers of close supervision that are essentially executive in character.
Anderson, 579 P.2d at 624, quoted in GeneralAssembly II, 704 P.2d at 1380.
Aside from separation of powers, a distinct constitutional limitation on the content of the Long Bill is set out in article V, section 32. That section mandates that the general appropriation bill shall embrace nothing but appropriations for the expenses of government and related purposes.[3]
This requirement prohibits the legislature from enacting substantive legislation in the Long Bill and also bars the amendment or repeal of a law in the Long Bill.Anderson, 579 P.2d at 624. The only proper use of the Long Bill is to provide funds for programs authorized by separate bills. Anderson, Id.
These two distinct constitutional principles have been applied to invalidate specific legislative conditions enacted in general appropriations measures. See Anderson;MacManus. Moreover, legislative attempts to use the Long Bill to restrict executive expenditures of federal funds, and other custodial funds unconnected with state appropriations, have been negated by the court. General Assembly III
(federal block grants which lacked matching or transfer provisions were not subject to legislative appropriation in the general appropriations bill); General Assembly I
(custodial funds received from a private corporation properly were expended by the executive without legislative appropriation); MacManus (Long Bill condition which purported to limit executive expenditure of federal funds held void).
In Anderson the court analyzed individual footnotes and held unconstitutional several portions of the general appropriations bill which conditioned various appropriations in the following manner: (1) specified the number of full-time employees (FTEs) in each county to be assigned to specific social service categories; (2) made additional staff for a state department conditional upon the agency reaching a projected future case load; (3) conditioned rate increases for facilities providing residential child care upon approval by the joint budget committee; (4) made other appropriations contingent upon specified agencies reporting to the joint budget committee and (5) prohibited the division of community colleges from using an appropriation to implement collective bargaining.570 P.2d at 626-629. See also General Assembly III,738 P.2d at 1171. Each of those footnotes was held to be an impermissible legislative encroachment into the executive sphere, the improper enactment of substantive law in a general appropriations bill, or both.
Careful scrutiny of the 1988 Long Bill reveals that many conditions are proper legislative enactments. There are, however, several provisions which violate the constitutional principles announced in Anderson and other cases.
d. Narrative headnotes. The first several pages of the 1988 Long Bill contain narrative provisions which apply generally to the body of line item appropriations. These are commonly referred to as headnotes.
Without question, the General Assembly acts well within its sphere when it provides an explanation of what is intended by a line item appropriation in the body of the bill. For example, the terms "personal services," "operating expenses" and "capital outlay" all are used in line items throughout the Long Bill. The definitions of those terms set out in the headnotes provide a useful and valid continuing point of reference to legislative intent. See 1988 Colo. Sess. Laws, 1-2.
In certain instances, however, the headnotes attempt to go beyond this limited purpose. For example, virtually every page of the Long Bill contains appropriations for personal services accompanied by parentheses which contain a number and the abbreviation "FTE." The headnote at paragraph (10) § 1 of the 1988 Long Bill defines "FTE" as "the budgetary equivalent of one position continuously filled full time for the entire fiscal year. . . ." That note sets out the following general condition, in pertinent part:
 The FTE limitation indicated is the maximum number of FTE positions which may be established at any time without additional legislative approval.
1988 Colo. Sess. Laws 3. In effect, each personal services line item in the Long Bill is conditioned by a limitation on the number of staff who may be employed by the executive branch for purposes of each appropriation.
This restriction is substantially identical to the FTE limitations held unconstitutional in Anderson, decided ten years ago. There the court invalidated such an FTE condition, reasoning that a restriction on the number of full-time employees directly interfered with executive authority to allocate staff and resources. 579 P.2d at 626.[4]
A different issue is presented by the Long Bill definition of "leased space" found in paragraph (6) of § 1, stating as follows:
 "Leased space" means the use and acquisition of office facilities and office and parking space pursuant to a rental agreement. No funds shall be expended for leased space except pursuant to a specific appropriation for such purpose.
1988 Colo. Sess. Laws 2. The paragraph concludes with a list of state agencies which are exempt from this requirement.
On one hand this condition simply states the obvious. Only if there is an appropriation for leased space may the executive expend funds for that purpose. But a contradictory legislative instruction is found in the definition of "operating expenses" at paragraph (2)(b) of § 1, which specifically authorizes expenditures for operating expenses to include "charges for rental property . . . ." Consequently, an executive agency may have a line item appropriation for "operating expenses," but not have a specific "leased space" line item. Such contradictory provisions restrict administrative flexibility to determine whether the most efficient allocation of resources for operating expenses would be to lease space. Nonetheless, I conclude that on its face the "leased space" limitation is not unconstitutional.
The headnote in paragraph 15 of § 1 of the 1988 Long Bill describes the function of footnotes as follows:
 When it is not feasible, due to the format of this act, to set forth fully in the column headed "item subtotal" the purpose of an item of appropriation or a condition or limitation on the item of appropriation, the footnotes at the end of each section of this act refer to provisions which set forth such purposes, conditions, or limitations, and such provisions are therefore intended to be binding portions of the items of appropriation to which they relate. In other cases, where clearly expressed, footnotes refer to statements which are not intended by the general assembly to be binding portions of appropriations but which are related to the indicated item or items of appropriation. Such nonbinding statements include explanations of the assumptions used in making appropriations, the general assembly's intent with respect to future appropriations, and requests on the part of the general assembly for particular administrative action in connection with items of appropriation.
1988 Colo. Sess. Laws 4.
Obviously this language requires an initial examination of each footnote to determine whether a particular footnote is intended to be "binding" or "nonbinding." But the very act of including "nonbinding" statements in the Long Bill violates the constitutional mandate that the general appropriation bill shall contain nothing but appropriations. Art. V, § 32, Colorado Constitution. A proper condition is part of an item of appropriation and therefore may be included in the Long Bill.See General Assembly II; Anderson. A "nonbinding" provision is by definition not intended to condition any appropriation and therefore is not properly a part of an item of appropriation.[5] Such nonbinding statements of legislative intent belong in committee reports, or other internal legislative documents, not in the Long Bill itself.
5. Selected footnotes.
Careful scrutiny of selected footnotes reveals several examples which violate one or both of the constitutional principles discussed above. In the case of each example listed below, the full text of the footnote is set out in an appendix which accompanies this opinion.
Footnote 4 (Appendix A) restricts several line item appropriations made to different departments for computer-related expenses. The footnote attempts to make expenditure of these appropriated funds contingent upon written approval of the information management commission. The statutory commission on information management is created for the purposes of overseeing strategic planning and setting policy for state information systems. Section 24-30-1702, C.R.S. (1988). The commission's existing statutory authority nowhere includes the power to veto expenditures by other executive agencies of funds appropriated to those agencies for information systems. Section 24-30-1703 expressly states that state agencies "shall have general supervision of their automated data processing systems" so long as they comply with the commission's "plans, policies, directives, rules and regulations . . . ." If the commission has not affirmatively approved or rejected a particular policy, then other agencies have authority to continue to make expenditure decisions. Footnote 4 is an impermissible attempt to use the Long Bill to amend substantive legislation to increase the powers of the commission from essentially an advisory or planning body to one with a veto over agency spending. The legislature certainly may grant the commission such powers, but only by separate bill.Compare State ex rel. Coll v. Carruthers,759 P.2d 1380, 1386 (N.M. 1988) ("The General Appropriation Act may not be used as a vehicle by which to nullify general legislation.").
Footnote 5 (Appendix B) requires creation of a motor vehicle advisory council and directs the council to consider certain matters before the fleet management program administered by the department of administration may be expanded. This provision constitutes both an attempt to administer the appropriation and the adoption of substantive legislation in the Long Bill.
Footnote 13 (Appendix C) states that "the intent of the General Assembly" is to have the department of corrections issue requests for proposals for privatization of specified functions, and that the Department "explore contracts" with private correctional facilities. If this footnote constitutes a "binding" condition to the department of corrections' budget, it is obviously an invalid attempt to administer expenditures. If it is a "nonbinding" statement of intent, then it is improper to include it in the Long Bill.
Footnote 22 (Appendix D) restricts an appropriation to the department of health, office of health protection, air quality control, mobile sources section, stating that no funds are to be expended to develop diesel fuel quality standards and regulations, unless "a measurable reduction in ambient concentrations of criteria pollutants or other pollutants will be confirmed through sound scientific data." This too is unquestionably an attempt to administer the appropriation by directing an executive branch agency to conduct specified scientific studies before spending the appropriation for designated purposes.
Footnote 29 (Appendix E) conditions an appropriation to the department of health, office of health protection, radiation and hazardous waste, by detailing the specific contents of billing information which must be supplied by that executive agency before the agency may collect fees from material licenses and other radiation control services. This is another example of an impermissible legislative attempt to direct the minutia of administrative functions in the guise of making an appropriation.
A related footnote 30 (Appendix F) subjects the same line item appropriation for the department of health to a further condition that the maximum inspection fee for nuclear density meters shall not exceed $100 per meter, nor shall a license renewal fee exceed $100 per company. In Anderson, the court stated that a determination whether a rate increase is appropriate properly is an executive function, not a legislative one. 579 P.2d at 627. Footnote 30 violates that principle by setting rates in the Long Bill.
Footnote 73 (Appendix G) presents an extreme illustration of an improper attempt by the legislature to administer an appropriation, despite contradictory statutes. That footnote conditions an appropriation to the department of institutions, division for developmental disabilities, and begins as follows:
 The Division will transfer 6 of the 10 existing clients from the Pueblo Regional Center to the Grand Junction and Ridge Regional Centers. The remaining 4 clients will be transferred to a renovated satellite facility. The 8 clients currently residing at the satellite facility will be moved to community-based programs in order to create room to accept the 4 clients from the Pueblo Regional Center. The renovated satellite facility will provide for the operation of 4 back-up capacity beds.
This provision goes on to set out a blueprint for administering specified activities of the division for developmental disabilities. It purports to make an executive decision to proceed with construction of a new back-up facility contingent on a decision (or the lack of a decision) by a legislative committee.
Reference must be made to existing provisions of law in order to understand that footnote 73 directs the disposition of clients of the department of institutions contrary to the existing statutory bill of rights for the care and treatment of the developmentally disabled. See art. 10.5 of title 27, C.R.S. 1973 (1988 Supp.). Among those statutory rights is the right for each client to have "an individual habilitation plan developed jointly by professional persons, the person receiving services and such person's parent or guardian." Section 27-10.5-113(1), C.R.S. (1988 Supp.). Ultimately it is the judicial branch which is charged with the responsibility for determining the place of abode of a person with developmental disabilities, subject to statutory direction. See § 27-10.5-110, C.R.S. (1988 Supp.). Footnote 73 directs the resettling of persons with developmental disabilities in derogation of their statutory rights. The provision constitutes legislative interference with the proper duties of both the executive and judicial branches. It further attempts to improperly retain a legislative veto of a future administrative decision to build a new facility.
Footnote 84 (Appendix H) requests the state auditor to "develop a space utilization master plan for buildings and agencies located in the Capitol Complex." To accomplish this plan, the state auditor is directed to determine what agencies should be located in which locations and to develop a sequence of actions to implement the results of the plan. The state auditor is part of the legislative branch and is not subject to the direction of the governor. Section 2-3-102, C.R.S. (1980). The auditor's statutory duties are principally to conduct post-audits of all financial transactions of state government and report to the legislative audit committee. Section 2-3-103, C.R.S. (1980). By separate statute, the General Assembly has directed the department of administration, state buildings division, to develop specific standards relating to space for executive agencies which "shall be the basis for approving facilities master plans . . . ." Section 24-30-1303(1)(h), C.R.S. (1988). Footnote 84 not only attempts to assign an executive function to a legislative branch official, but further purports to repeal the existing statutory authority for that function by a footnote in the Long Bill.
Footnote 91 (Appendix I) would bar the department of natural resources from using an appropriation "to employ full-time permanent classified state employees." Personnel decisions of this nature are precisely the kind of staffing and resource allocation decisions which are properly the responsibility of the executive branch. It is an executive administrative decision how to expend an appropriation to accomplish the legislative purpose.
The above list does not exhaust the constitutional problems in the footnotes enacted in the 1988 Long Bill, nor does it identify those conditions which indisputably are proper exercises of the plenary legislative power over appropriations. This discussion is intended, rather, to illustrate the more obvious violations of the constitutional principles discussed earlier in this opinion.
SUMMARY
The plenary power of the General Assembly over appropriations extends to the inclusion of conditions in a general appropriations bill which restrict executive expenditure of those appropriations. Such conditions may not, however, reserve to the legislature powers of close supervision that are essentially executive in character. Nor may the General Assembly enact substantive legislation in the Long Bill.
While the 1988 Long Bill contains many proper legislative restrictions, several headnotes and footnotes contain provisions which are invalid legislative intrusions into the executive sphere, are substantive legislation, or both. Such unconstitutional provisions are invalid and unenforceable.Anderson; MacManus.
This opinion does not attempt to examine all of the contested provisions in the 1988 Long Bill, some of which present much closer questions of law than the examples discussed above. Any additional questions can be answered as they arise.
Sincerely,
 DUANE WOODARD Attorney General
APPROPRIATIONS GENERAL ASSEMBLY GOVERNOR
Colo. Const. art. III
Colo. Const. art. V. § 32
GOVERNOR
The 1988 Long Bill contains conditions in headnotes and footnotes which either violate the separation of powers or constitute the enactment of substantive legislation in a general appropriations bill, or both.
[1] You have not asked me to address whether your veto and accompanying message were filed in conformance with constitutional requirements, and this opinion does not address that separate issue.
[2] Article III states:
 The powers of the government of this state are divided into three distinct departments, — the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.
[3] Art. V, § 32 — Colorado Constitution:
 Section 32. Appropriation bills. The general appropriation bill shall embrace nothing but appropriations for the expense of the executive, legislative and judicial departments of the state, state institutions, interest on the public debt and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.
[4] The relevant footnotes in Anderson purported to condition an appropriation to the department of social services with specific FTE limitations by county and by specific job categories. The governor vetoed the FTE limitations as an interference with executive authority. The court stated:
 We agree that these conditions on the number of full-time employees in each county interfere with the executive authority to allocate staff and resources in administering the funds. Footnote 79 especially is invalid for attempting to allocate the number of full-time employees to be hired in certain job categories. In sum, these provisions are clearly in violation of the separation of powers doctrine.
579 P.2d at 626.
[5] See Colton v. Branstad, 372 N.W.2d 184
(Iowa 1985). Under Iowa law, a condition to an item of appropriation is part of an item and is not subject to a gubernatorial line item veto. In Coltan, the Iowa court distinguished a "rider," which is subject to the item veto, defining a "rider" as an unrelated substantive piece of legislation incorporated in an appropriation bill.
372 N.W.2d at 191.