Senator Joseph J. WELSH; Senator Bill Hutchins; Senator Thomas Mann, Jr.; Representative Thomas J. Jochum; Representative Bob Arnould; and Representative Donald D. Avenson, Appellees,

v.

Terry E. BRANSTAD, Governor of the State of Iowa in his Official Capacity, Appellant.

No. 90–571.

Supreme Court of Iowa.

May 15, 1991.

Robert A. Van Vooren and Maria Mihalakis Waterman of Lane & Waterman, Davenport, for appellant.

Brent R. Appel and Thomas W. Andrews of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellees.

CARTER, Justice.

The Governor of Iowa has appealed from a judgment which invalidated the exercise of the item vetoes of portions of three appropriation bills enacted by the General Assembly. These item vetoes affected portions of 1989 Iowa Acts ch. 307, § 6(10); ch. 308, § 1(8); and ch. 319, § 19. In the discussion which follows, we will refer to these three bills as S.F. 363, § 6(10); S.F. 520, § 1(8); and H.F. 774, § 19, respectively. The appellees are persons who are duly elected and acting members of the Seventy-third General Assembly, which enacted the legislation from which this controversy developed. They commenced this action in the district court challenging the legality of the item vetoes and seeking appropriate declaratory relief.

The district court granted the appellees' motion for summary judgment as to all three item veto challenges. The court entered declaratory judgments finding that all three item vetoes exceeded the Governor's authority under article III, section 16 of the Iowa Constitution, as amended in 1968, and declaring the legislation to have become law in the form enacted by the General Assembly.[1] After considering the arguments which have been presented by the parties to the appeal, we affirm the district court's order invalidating the item vetoes of S.F. 363, section 6(10) and H.F. 774, section 19.[2] We reverse that portion of the district court's order invalidating the item veto of S.F. 520, section 1(8).

## I. Finality of Judgment for Purposes of Appeal.

As we have indicated earlier in this opinion, the Governor filed a counterclaim in this action challenging the validity of the vetoed portions of S.F. 520 and H.F. 774 under the separation of powers clause of article III, section 1 of the Iowa Constitution. Because these claims were severed

for separate determination following the adjudication of appellees' item veto challenge, the action is not yet final with respect to all issues and all parties. Ordinarily this situation negates the required finality of judgment to allow an appeal as of right under Iowa Rule of Appellate Procedure 1(a). *Reuter v. City of Oskaloosa,* 253 Iowa 768, 772–73, 113 N.W.2d 716, 719 (1962). Notwithstanding this lack of finality, we may treat a notice of appeal as an application for permissive appeal under Iowa Rule of Appellate Procedure 1(c). *Banco Mortgage Co. v. Steil,* 351 N.W.2d 784, 786–87 (Iowa 1984). Given the importance of the issues presented to the operation of state government and the already lengthy delay since the challenged item vetoes took place, we will allow the appeal to proceed.

## II. The Legislation Which Was Vetoed.

The three pieces of legislation which were the subjects of the challenged item vetoes were totally unrelated. We briefly describe the portions of those acts which are the subject of the present controversy.

A. *S.F. 363, section 6(10).* The act identified as S.F. 363 was a bill making supplemental appropriations, effective immediately upon enactment, to a lengthy list of state agencies and departments for the remainder of the fiscal year ending June 30, 1989. Among the agencies for whose operations these funds were appropriated was the department of human services. Subsections 5, 6, and 7 of section 6 of S.F. 363 appropriated money for maintenance projects and capital improvements at mental health and juvenile facilities controlled by that agency.

The legislature attempted to shelter any unspent appropriations made in subsections 5, 6, and 7 of section 6 from the automatic reversion statute. Automatic reversion was a process mandated by Iowa Code

---

1. The court severed for separate determination the Governor's counterclaim alleging that the vetoed portions of S.F. 520 and H.F. 774 were an invalid exercise by the legislature of powers exclusively granted to the Governor and thus a violation of article III, § 1 of the Iowa Constitution.

2. Our opinion only affects the item veto of that portion of H.F. 774, § 19, which is identified in our discussion of the issues. Item vetoes of other portions of that statute have not been challenged in this litigation.

section 8.33 (1987), which provided that, "[o]n September 30, or as otherwise provided in an appropriation Act, following the close of each fiscal year, all unencumbered or unobligated balances of appropriations made for that fiscal term revert to the state treasury." To avoid having any unspent portion of these particular appropriations revert to the treasury on September 30, 1989, the legislature provided as follows in subsection 10 of section 6:

> The provisions of section 8.33 do not apply to the funds appropriated in subsections 5, 6, and 7. The unobligated and unencumbered funds remaining on March 30, 1990, from the funds appropriated in subsections 5, 6, and 7, for the fiscal year beginning July 1, 1988, shall revert to the general fund of the state on March 30, 1990.

1989 Iowa Acts ch. 307, § 6(10). The Governor item vetoed subsection 10 in its entirety.

B. *H.F. 774, section 19.* The act designated as H.F. 774 was a massive appropriations bill relating to the funding of numerous departments, agencies, and commissions, including the board of regents institutions. An appropriation for faculty salaries at the University of Iowa is contained in Division IV(2) of the act. This legislation, as enacted by the legislature, provided, in relevant part, as follows:

> a. General university, including lakeside laboratory
>
> (1) For salaries, support, maintenance, equipment, miscellaneous purposes, and for not more than the following full-time equivalent positions:
>
> ......................... $149,732,881
> .....................FTEs   4,345.69
>
> From moneys appropriated in this subparagraph, $900,000 shall be used to improve undergraduate education at the state university of Iowa....
>
> ....
>
> (2) Agricultural health and safety pilot programs:
>
> .....................FTEs      1.28
>
> b. Faculty salary increases
>
> For increases in faculty salaries for the fiscal year beginning July 1, 1989,

and ending June 30, 1990, *that are in addition to the total faculty salaries paid during the fiscal year beginning July 1, 1988;*

......................... $   3,311,000

1989 Iowa Acts ch. 319, § 19 (emphasis added). The Governor vetoed that portion of the bill which we have italicized.

In Division IV of section 19 of H.F. 774, subparagraphs (3)(b) and (4)(b) contain appropriations for faculty salary increases at Iowa State University and the University of Northern Iowa. These appropriations, like the one relating to the University of Iowa, specify "faculty salary increases ... *that are in addition to the total faculty salaries paid during the fiscal year beginning July 1, 1988.*" 1989 Iowa Acts ch. 319, § 19 (emphasis added). The Governor also vetoed the italicized language in these two appropriations.

C. *S.F. 520, section 1(8).* The act designated as S.F. 520 contained a series of appropriations to the department of economic development for the fiscal year beginning July 1, 1989, and ending June 30, 1990. These appropriations related to salaries, tourism promotion programs, national marketing programs, and export trade activities. The appropriation for export trade activities was contained in subsection 8 of section 1 of S.F. 520. This legislation, as enacted by the legislature, provided as follows:

> Export trade activities
>
> For international trade activities including a program to encourage and increase participation in trade shows and trade missions by providing financial assistance to businesses for a percentage of their costs of participating in trade shows and trade missions, by providing the lease/sublease of showcase space in existing world trade centers, by providing temporary office space for foreign buyers, international prospects, and potential reverse investors, and by providing other promotional and assistance activities, including salaries and support for not more than the following full-time equivalent positions:

........................ $   400,000
.....................FTEs      0.25

*As a condition, limitation, and qualification, any official Iowa trade delegation led by the governor which receives financial or other support from the appropriation in this subsection shall be represented by a bipartisan delegation of the executive council or their designees.* Notwithstanding section 8.39, funds appropriated by this subsection shall not be subject to transfer.

1989 Iowa Acts ch. 308, § 1(8) (emphasis added). The Governor item vetoed that portion of the bill which we have italicized.

### III. *Propriety of Summary Judgment Procedure.*

The Governor challenges the summary judgment procedure utilized by the district court in resolving the appellees' item veto challenges. In this argument it is urged that, whether the excised portion of the bills may be characterized as "separate appropriation items" or "unrelated riders," and thus subject to item veto, is a question of fact. It is contended that summary judgment was improper because different inferences and conclusions concerning these characterizations could be drawn from the assorted affidavits filed in resistance to the motion.[3]

In contending that material factual issues had to be resolved in the litigation, the Governor relies on language contained in *Colton v. Branstad*, 372 N.W.2d 184 (Iowa 1985), which also involved an item veto challenge. In that case, we alluded to the general legal principles which apply in summary judgment procedure and observed:

Plaintiffs did little to carry their burden to establish there was no genuine issue of material fact....

....

Defendant's affidavits obviously were designed to show there was a question of fact to be resolved as to whether veto of the section 12 language could in any way alter the purposes for which funds appropriated in section 4(6) might be spent. *Id.* at 188. Notwithstanding these comments, we determined in *Colton* that summary judgment procedure was appropriate to consider the substantive issue raised because of certain stipulations by the parties. *Id.*

In the present case, there are no stipulations as to the subject matter of the proffered affidavits. Despite this condition of the record, we nonetheless conclude that summary judgment was a proper vehicle for determining the substantive issues raised in the present case. To the extent that the legal effect of vetoed legislation, either before or after the exercise of an item veto, becomes an issue in determining whether the veto was validly exercised, this subsidiary question is an issue of law rather than an issue of fact. Any contrary suggestion in *Colton* was a mischaracterization of the type of determination which is made in item veto cases. Similarly, the ultimate question of whether the excised portion was subject to item veto is always a question of law.

Item veto legislation is unique in the manner in which it blurs the distinction between legislative facts and adjudicative facts. Adjudicative facts are those which establish the factual predicate for application of legal issues relevant to the particu-

---

**3.** These include: (1) the affidavit of Governor Branstad averring that the faculty salary appropriation veto did not affect the purpose or amount of the appropriation, that the limitation on reversion of department of human services capital improvement funds which was vetoed was a separate appropriation (or reappropriation) of those funds, and that the requirement for nonpartisan executive council representation on foreign trade delegations which vetoed was unrelated to the amount and purpose of the appropriation; (2) the affidavits of Margaret Pickett, Assistant Vice President of Business and Finance at Iowa State University, and Ann M. Rhodes, Assistant Vice President of Finance and University Services at the University of Iowa, averring that the vetoed provisions tying faculty salary increases to prior-year expenditures mandated a minimum amount to be expended irrespective of changes in need or enrollment; and (3) the affidavit of Patrick D. Cavanaugh, director of the Iowa department of management, averring that for item veto purposes restrictions on automatic reversions pursuant to Iowa Code § 8.33 should be viewed differently than provisions restricting transfer of funds pursuant to Iowa Code § 8.39.

**648**

lar case. *State v. Henze,* 356 N.W.2d 538, 540 n.1 (Iowa 1984); 10 J. Moore & H. Bendix, *Moore's Federal Practice* § 201.10 (1985). Legislative facts, on the other hand, are ordinarily considered to be those disputable assertions of an evaluative nature which aid courts in shaping the law to achieve the proper social policy. *Henze,* 356 N.W.2d at 540; *Lotus Dev. Corp. v. Paperback Software Int'l,* 740 F.Supp. 37, 74 (D.Mass.1990).

■ The basic adjudicative facts in item veto legislation consist of showing that a bill was enacted by the legislature in a particular form and that the Governor executed an item veto with respect to a portion of the bill. All other matters bearing on whether the vetoed portion of the legislation was "any item of an appropriation bill," and thus subject to item veto under article 3, section 16 of the Iowa Constitution, are legislative facts. These legislative facts may be presented either formally or informally, and neither the trial court which first considers such matters nor an appellate court on review is limited by the rules of admissibility and the standards of review that apply to disputed issues of adjudicative fact. *Lockhart v. McCree,* 476 U.S. 162, 168–69, 106 S.Ct. 1758, 1762–63, 90 L.Ed.2d 137, 145 (1986) (rules for reviewing adjudicative facts do not apply to consideration of legislative facts by appellate court); *Chastleton Corp. v. Sinclair,* 264 U.S. 543, 548, 44 S.Ct. 405, 406, 68 L.Ed. 841, 844 (1924) (the court may ascertain as it sees fit any fact that is merely a ground for laying down a rule of law).

■ Based on the foregoing considerations, we conclude that the "genuine issue of material fact" required to preclude summary judgment under Iowa Rule of Civil Procedure 237(c) must involve adjudicative facts. The question of whether or not the vetoed portions of the legislation are properly characterized as "separate appropriation items" or "unrelated riders" does not involve adjudicative facts. Consequently, the affidavits which the Governor presented in opposition to the summary judgment motion did not preclude the court from invoking that remedy.

**IV.  *Validity of Item Vetoes of S.F. 363 and H.F. 774.***

■ We have consistently recognized that the fundamental test for determining the validity of an item veto under article III, section 16 of the Iowa Constitution is whether the vetoed portion of the legislation

> may be taken out of a bill without affecting its other purposes and provisions. It is something that can be lifted bodily from it rather than cut out. No damage can be done to the surrounding legislative tissue, nor should any scar tissue result therefrom.

*Rush v. Ray,* 362 N.W.2d 479, 481 (Iowa 1985); *State ex rel. Turner v. Iowa State Highway Comm'n,* 186 N.W.2d 141, 151 (Iowa 1971).

The Governor attempts to distinguish a legislative restriction on section 8.33 reversions, for item veto purposes, from the legislative restriction on section 8.39 transfers which was the subject of our decision in *Rush,* 362 N.W.2d at 483–84. He urges that the legislation shielding certain appropriations in S.F. 363 from the automatic reversion clause of Iowa Code section 8.33 constituted a reappropriation of those funds for the next fiscal year. This argument assumes that the so-called reappropriation is a separate appropriation of moneys and thus subject to item veto. Although the reappropriation argument is ingenious, we cannot adopt it in the context of the present litigation.

The language of section 8.33 provides for reversion of funds on September 30 of the next fiscal year "or as otherwise provided in an appropriation Act." We believe this quoted language invites a tailored reversion clause within the appropriation bill itself. When this money was to be spent was obviously a matter of concern to the legislature in making a supplemental appropriation with only a few months remaining in the fiscal year. It acted on that concern by establishing a clear and unambiguous time for the reversion of these appropriations in subsection 10 of section 6 of S.F. 363. We believe that this provision

was an integral part of the appropriation of the funds.

A legislative provision tailoring the reversion of appropriated moneys to the general fund was held not to be the subject of item veto in *Welden v. Ray*, 229 N.W.2d 706, 708, 713 (Iowa 1975). We find no reason to reach a different result with respect to the item veto of S.F. 363.

■ We also reject the Governor's contentions concerning those appropriations in section 19 of H.F. 774 for faculty salary increases at the three state universities which were "in addition to the total faculty salaries paid during the fiscal year beginning July 1, 1988." The excised language does not, as the Governor suggests, constitute a separate appropriation item subject to item veto. Although the Governor and the appellees disagree on the interpretation of these provisions, they are under the interpretations espoused by either party, both quantitative and qualitative limitations on the moneys appropriated.[4] As such, they do not differ in their basic character from the limitation on salary appropriations of which item veto was held improper in *Welden*, 229 N.W.2d at 708, 713. The district court did not err in invalidating the challenged item vetoes of S.F. 363 and H.F. 774.

### V. *Validity of Item Veto of S.F. 520.*

■ Our determination of the validity of the item veto exercised with respect to S.F. 520 calls into play the "unrelated rider" characterization espoused in *Colton*, 372 N.W.2d at 190–91. We recognized in that case, as concomitant principles, that, on the one hand, the Governor may not selectively strike words and phrases from "conditions inextricably linked to an appropriation," and, on the other hand, the legislature may not block item veto by attaching "unrelated riders" to an appropriation. *Id.* at 190–91. Our recognition of this distinction forces us to decide whether the requirement for nonpartisan executive counsel representation on foreign trade delegations financed by

appropriations contained in S.F. 520 was an "unrelated rider" tacked on to the appropriation.

In urging that the mandate for nonpartisan executive council representation was an "unrelated rider," the Governor asserts that the attachment of this requirement constituted "inappropriate" legislative drafting. This argument may stem from our use of quoted language in *Colton* which mentions "matter[s] of general legislation more appropriately dealt with in a separate enactment." *Id.* at 191 (quoting *Henry v. Edwards*, 346 So.2d 153, 158 (La. 1977)). The absence of a useful frame of reference for determining when and how it is "appropriate" in the legislative sense to combine fiscal legislation with substantive provisions affecting the objects of the expenditures causes us to reject this test. We believe, rather, that the line must be drawn solely on the basis of whether the vetoed provision effectively qualified the subject, purpose, or amount of the appropriation either quantitatively or qualitatively.

Viewed in this light, the "unrelated rider" characterization recognized in *Colton* is but a restatement of the observations which this court made in its initial item veto case of *State ex rel. Turner*, 186 N.W.2d at 150. In *Turner* section 4 of an appropriations act specified that a particular appropriation could be used for overtime pay but not for capital improvements. Section 5 of the same bill provided that the permanent resident engineers' offices of the state highway commission should not be moved from their present locations. In holding that the provisions of section 5 were subject to item veto we stated:

> It should be noted section 5 places no prohibition against the use of any moneys appropriated by the act for the moving of permanent resident engineers' offices presently established by the defendant commission. Had such language [been] used ... we are impelled to the view that section 5 would have in such

4. This is particularly true in light of the affidavits filed in resistance to the motion for sum-

mary judgment. *See* n.3 supra.

case been a proviso or condition upon the expenditure of the funds appropriated, but lacking such phraseology it obviously is not.

*Id.*

By analogy to *State ex rel. Turner*, the issue with respect to the item veto of S.F. 520 is whether the words "[a]s a condition, limitation, and qualification" impact upon the appropriation or whether they are a separate and unrelated piece of legislation affecting the composition of foreign trade delegations. We find the latter to be the case. The language with respect to bipartisan executive council representation on Iowa export trade delegations does not suggest that the amount or purpose of the appropriated funds would be affected if, for some reason, that provision was ignored. Consequently, we hold that this provision was properly subject to item veto and that the district court erred in concluding that it was not.

Because we have determined that the item veto issues were properly decided on a motion for summary judgment, we need not consider the appellant's contentions with respect to administrative scheduling orders in the district court. Those orders were only material if the case had gone to trial. The trial of appellant's counterclaim was exempted from the operation of those scheduling orders. We have considered all other issues presented and conclude that the judgment of the district court must be affirmed with respect to the item vetoes of S.F. 363, section 6(10) and H.F. 774, section 19. The judgment of the district court with respect to S.F. 520, section 1(8) is reversed.

Because no fact issue is involved and the question is one of law, we remand the case so that the district court may entertain and grant a motion for summary judgment for the appellant with respect to appellees' challenge to the item veto of S.F. 520, section 1(8). Costs on appeal are assessed seventy-five percent to the appellant and twenty-five percent to the appellees.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.