BLANCHE, Judge.
Jonathan C. Harris, individually as a resident and taxpayer of the State of Louisiana and as a representative of the class of all other residents and taxpayers’ of the State of Louisiana, brought suit against the Board of Trustees of the Louisiana Public Facilities Authority (LPFA), First Louisi *1040 ana Development Corporation (erroneously sued as the “Public Facilities Corporation”), and the State of Louisiana challenging the constitutional validity of the creation of the LPFA and the validity of the actions taken by the Board of Trustees of the LPFA in authorizing the issuance of bonds to be sold to fund certain facilities and equipment for the St. Charles General Hospital in New Orleans. The trial court upheld the validity of the creation of LPFA, and the actions of its Board of Trustees were upheld subject to correction of various procedural defects in the proposed issuance and sale of the St. Charles General Hospital Series 1976 Bonds.
The defendant State of Louisiana, beneficiary of the trust, appealed from the judgment of the trial court. Subsequently, the State, in a joint motion with the trustees, dismissed its appeal. Thus, the only appeal before this Court is that of plaintiff Harris, who assigns three errors on the part of the trial court which we set out here as taken from his brief:
(1) The court erred in finding that the trustees herein are a “public corporation” of the State of La. under La. Acts 1976, No. 699, § 1, (R.S.) [La. R.S. 9:2341 D. (1976 supp.)].
(2) The court erred in failing to find that Executive Order No. 71 of August 23, 1974, was ultra vires and null.
(3) The court erred in finding that the activities of the trustees are a “public purpose.”
Regardless of how plaintiff specifies the errors of the trial court, the real issue is to challenge the method of financing public purpose projects in the State of Louisiana through public trust authorities formed pursuant to the Louisiana Public Trust Act, LSA-R.S. 9:2341-9:2347 (Act No. 135 of 1970 as amended by Act No. 699 of 1976).
Before discussing the specific assignments of error, we note the facts surrounding the alleged errors by quoting from the trial court’s well reasoned Written Reasons for Judgment:
“The Louisiana Public Trust Act governs the formation of public trusts such as the LPFA. It was enacted by the Legislature as Act 135 of the Regular Session of 1970. Act 135 has been amended by Act 699 of the 1976 Regular Session. The Act, as passed in 1970, was based upon Article IV, Section 16 of the Louisiana Constitution of 1921 which empowered the Legislature to ‘authorize the creation of express trusts for any purpose
“Act 135 authorized the creation of express trusts with, ‘ . the state, or any parish, municipality, political or governmental subdivision, or governmental agency or instrumentality of the state as the beneficiary thereof.’ Public trusts formed pursuant to the Act could be organized for the purpose of furthering any authorized or proper function of the beneficiary of the trust.
“The LPFA was formed August 21, 1974, pursuant to the provisions of Act 135 through the execution of an Indenture of Trust by Public Facilities Corporation, as Settlor, and five individual named trustees. The Indenture of Trust was presented to the Governor for acceptance of the beneficial interest. The Governor formally accepted the beneficial interest in the LPFA through Executive Order No. 71 issued on August 27, 1974. His acceptance on behalf of the State established the State as the beneficiary of the LPFA trust and constituted a contract between the State and the Settlor of the public trust authority for the purposes and in accordance with the stipulations specified in the trust indenture.
“The purposes of the LPFA, as set forth in its Indenture of Trust, are to promote, encourage, and further the accomplishment of all activities which are or may become of benefit to the State of Louisiana and which have a public purpose. The LPFA is authorized to provide funds for the cost of fulfilling the purposes for which it is created and to do so may incur indebtedness either unsecured or secured by all or part of its assets or revenues.
“In October of 1974, the LPFA acquired the Saint Charles General Hospital *1041 from National Medical Care of New Orleans, Inc. Funds for the acquisition were provided through the sale of $4,700,000 in bonds by the authority. The bonds so issued were to be retired entirely from self-generated revenues of the hospital. The LPFA then leased the hospital to Saint Charles General Hospital, Inc., a Louisiana non-profit corporation, for monthly rental payments sufficient to pay the principal, interest, and any redemption premium on the bonds of the 1974 issue. The hospital facilities have been operated since that time by Saint Charles General Hospital, Inc., pursuant to a Lease Agreement and Operation and Management Contract between Saint Charles General Hospital, Inc., and the LPFA.
“On October 6 and November 8, 1976, the LPFA Board of Trustees authorized the issuance of a second series of bonds in the amount of $5,725,000 to finance additional improvements and facilities at the Saint Charles General Hospital. Like the 1974 issue, these bonds were to be retired solely through self-generated revenues of the hospital. In accordance with the provisions of Act 699 of the 1976 Regular Session, which had amended the Public Trust Act, the LPFA submitted the 1976 project to the State Bond Commission for review. On October 28, 1976, the State Bond Commission authorized the publication of a ‘Notice of Sale of Bonds’ to announce the intention of the Bond Commission to sell the LPFA 1976 bond series on November 30, 1976.
“The plaintiff brought his action on November 9, 1976, and the LPFA has since that time delayed proceeding any further with the hospital projects.” (Record, pp. 159-161)
As to plaintiff’s first assignment of error that the court erred in finding that the trustees are a “public corporation” of the State of Louisiana under LSA-R.S. 9:2341(D), we can find no error. The significance of such a finding is that as a “public corporation” the trust is exempt from constitutional limitations applicable to the debts of political bodies or subdivisions of the State which lend and pledge its full faith and credit for the payment thereof.
This same principle was involved and ruled on by the Supreme Court in Bertrand v. Sandoz, 260 La. 239, 255 So.2d 754 (1971). There a public trust was created for the purpose of making improvements to a hospital within a hospital service district in the Parish of St. Landry. The hospital district was the beneficiary of the trust. The public trust was known as the Opelousas General Hospital Authority. The trustee sought to issue bonds to finance the aforesaid improvements, and their right to do so was challenged on the grounds that the bonds could not be issued without first complying with the constitutional mandate to submit such proposals to a public referendum.
In rejecting this argument, the Supreme Court stated that even if the hospital service district was a subdivision of the State, the requirement for a public referendum was not applicable because the “hospital service district incurs no debt, issues no bonds and levies no tax in this plan. It is the trust which will incur the indebtedness securing the revenue bonds.” Bertrand v. Sandoz, supra at 760.
Thus, the rule seems to be that a public trust as a public corporation that incurs a bonded indebtedness is not subject to the same statutory and constitutional restrictions as are imposed on the State or its subdivisions concerning the incurrence of a public debt because the public fisc is not liable for the payment of such debt. Bertrand, supra.
The trial court, in its Written Reasons for Judgment, made the following statement with which we concur concerning the “public corporation” aspects of the case:
“It is clear that a public trust authority created under the Public Trust Act is neither a political subdivision of the State nor a municipal corporation. It is a unique creature of the Legislature designated as a ‘public corporation’ in R.S. 9:2341. It is a corporation created by the Legislature and empowered to act for public purposes. The establishment of *1042 such an entity has been said to be within the constitutional powers of the Legislature by the Supreme Court * * * (Record, p. 166)
We now turn to the second assignment of error wherein plaintiff contends that the acceptance of the beneficial interest in the public trust delegates extensive sovereign powers of the State, which powers are properly reserved to the Legislature under Article 3, § 1, Louisiana Constitution of 1974. These consist of the power to adopt or make a classification of the persons to be benefited by the public trust; the power to appropriate, budget and expend public monies; the power to acquire, operate and encumber public properties; the power to legislate rules to govern public properties; the power to levy charges, fees and taxes to be paid by the public for the support and maintenance of a public project. It is contended that the acceptance of the beneficial interest of a public trust is a legislative function that may not be exercised by the Governor.
The trial court properly rejected these contentions because neither the law nor the record support such a finding. In our opinion, the acceptance by the Governor of the beneficial interest in a public trust is no more than an act on his part in accordance with legislative will to form a contract with the settlor of the trust for public purposes authorized by the Public Trust Law. It is ministerial in nature and constitutes the manner in which the State accepts the benefits of those trusts which are confected in accordance with statutory authority.
The trial judge, in his opinion, made the appropriate distinction, stating:
“The distinction between a legislative act which may not be delegated to the executive, and a ministerial one which may, indeed must, be delegated to the executive is set forth in Cooley’s Constitutional Limitations, 7th ed., at page 157: ‘The authority that makes the laws has large discretion in determining the means through which they shall be executed; and the performance of many duties which they may provide for by law they may refer either to the chief executive of the State, or, at their option, to any other executive or ministerial officer, or even to a person specially named for the duty.’
“The Legislature enacted the Public Trust Act expressly granting authority for the creation of public trusts, and providing in the same act the method by which the authority was to be executed. It was the method of operation of the law which was delegated to the Governor, and through him to the LPFA trustees, not the power to make the law. The power to make law is exclusively a legislative function. The power to execute the law is properly an executive one.” (Record, p. 169)
Finally, we consider the assertion by the plaintiff that the court erred in finding that the activities of the trustees are a “public purpose.” The subject of “public purpose” was adequately and properly considered by the trial judge in his Written Reasons and we adopt his reasoning here:
“By its Indenture of Trust, the LPFA is given authority to act within the guidelines of the Public Trust Act to perform ‘ . . . public purposes conducted in the public interest,’ stated generally as,
‘To promote, encourage, and further the accomplishment of all activities which are or may become of benefit to the Beneficiary and which have a public purpose, . . . ’
followed by an illustrative listing of activities.
“R.S. 9:2341(B), enacted by Act 699, provides an illustrative list of, ‘public functions or purposes of the state.’
“The plaintiff contends that the ‘public purposes’ set forth in the trust indenture and the ‘public purposes’ set out in 9:2341(B) exceed the authorization provided by Act 135 of 1970, under which the LPFA was formed.
“Act 135 states that public trusts may be formed with the State as beneficiary, ‘ . and the purpose thereof may be the furtherance, or the providing of funds for the furtherance, of any authorized or proper function of the beneficiary.’
*1043 “It is clear that under the Indenture of Trust, Act 135, and Act 699, the LPFA is authorized to act for ‘public purposes.’ The lists provided in the statutes are only illustrative. The issue then is whether or not the purposes of the LPFA are public purposes.
• “A public purpose for the LPFA would be any ‘authorized or proper function’ of the State of Louisiana. A public function of the State is any function designed to improve or protect the general welfare of the people of the State. The LPFA is authorized to act in furtherance of the general welfare of the public. Any activities which it undertakes must be scrutinized in that light. Activities which it might undertake which are not designed to aid the public welfare are not authorized. To date, its attempts to aid in the improvement of health facilities in and around the St. Charles General Hospital all have a public purpose. The authority given to the LPFA by both Act 135 and Act 699 is essentially the same in scope, and it has not been exceeded.” (Record, pp. 183-185)
For the reasons given, we affirm the judgment of the trial court, with the costs to be paid by the plaintiff-appellant.
AFFIRMED.