795 So.2d 288 (2001)
LOUISIANA PUBLIC FACILITIES AUTHORITY
v.
Murphy J. "Mike" FOSTER, Jr., in his official capacity as Governor of Louisiana.
No. 2001-CA-0009.
Supreme Court of Louisiana.
September 18, 2001.
*290 Tina V. Grant, Baton Rouge, Richard P. Ieyoub, Attorney General, Counsel for Applicant.
Harry A. Johnson, III, Counsel for Respondent.
Charles E. Bruneau, Jr., Alfred W. Speer, II, Counsel for Louisiana House of Representatives (Amicus Curiae).
*291 JOHNSON, Justice.[*]
The district court declared unconstitutional Acts 915, 1238, and 1323 of the 1999 Regular Session of the Louisiana Legislature, as well as certain portions of Act 11 of the Second Extraordinary Session of 2000 and issued a permanent injunction prohibiting the state from enforcing these Acts. The state appealed that judgment to this court pursuant La. Const. Art. V, § 5(D). For the reasons that follow, we hold that the Louisiana Public Facilities Authority (LPFA) is not protected by La. Const. Art. I, § 23, as it is not a private citizen. We also hold that Act 1238 does not violate La. Const. Art. III, § 15, as it does not violate the "one object" requirement, and the amended version of the bill is relative or pertinent to the bill as introduced. We further hold that Act 11 of the Second Extraordinary Session of 2000 does not violate La. Const. Art. III, § 16(A), as it was enacted pursuant to a reasonable exercise of the legislature's absolute power to regulate funds to operate state government. Accordingly, we reverse the district court's ruling that Acts 915, 1238, and 1323 of the 1999 Regular Session of the Louisiana Legislature, and Act 11 of the Second Extraordinary Session of 2000 are unconstitutional.

FACTS AND PROCEDURAL HISTORY
The LPFA, a non-profit public trust and public corporation, was created under the authority the Public Trust Act, LSA R.S. 9:2341 et seq, by the Public Facilities Corporation, as settlor. The Indenture of Trust dated August 21, 1974, under which the LPFA was created, named the State of Louisiana as the beneficiary of the trust. The Governor of Louisiana formally accepted the beneficial interest through Executive Order No. 71 issued on August 27, 1974. The Governor's acceptance established the state as the beneficiary of the LPFA trust.
As set forth in the Indenture of Trust, the purposes of the LPFA are to "promote, encourage, and further the accomplishment of all activities which are or may become of benefit to the State of Louisiana and which have a public purpose." The Indenture also authorized the LPFA to provide funds to further authorized public functions or purposes.
In its 1999 Regular Session, the legislature passed Acts 915, 1238, and 1323. Act 11 was passed in the Second Extraordinary Session of 2000.
Act 915 of 1999, which enacted LSA R.S. 9:2346(C), requires public trusts "in which the State of Louisiana is a beneficiary" to submit its proposed annual operating budget to the Joint Legislative Committee on the Budget for its review and approval and prohibits such trusts from incurring any expenditures or obligations for items which deviate from its approved annual operating budget.[2]
Act 1238 of 1999 amended LSA R.S. 9:2343 concerning public trusts existing on *292 August 15, 1999, the Act's effective date, as well as public trusts created thereafter. Pursuant to Act 1238, the number of trustees on the boards of trustees of public trusts, in which the State is a beneficiary, was increased from five to seven. The Act also provides that those appointed by the governor must be approved by the Senate. Additionally, Act 1238 declared that the terms of the trustees serving on the effective date of the Act shall automatically expire.[3]
Act 1323 of 1999 amended LSA R.S. 9:2343(A), to limit the per diem payable to trustees of public trusts to $200 and restricts the reimbursement of their vouchered expenses to the rates applicable to state officers as provided by the rules and regulations promulgated by the Commissioner of Administration.[4]
Act 11 of the Second Extraordinary Session of 2000 is a general appropriations bill. One of the "line items" within the Act appropriates $5,000,000 for the Economic Development Awards Program, payable out of the State General Fund, "provided that the [LPFA] sends $5,000,000 to the State Treasury for credit during FY 2000-2001 and such revenue is incorporated into the Official Forecast for FY 2000-2001 by the Revenue Estimating Conference."
On July 22, 1999, the LPFA filed suit, naming Murphy J. "Mike" Foster, Jr., in his official capacity as Governor of Louisiana, as defendant. In the suit, the LPFA sought a declaratory judgment that Acts 915, 1238, and 1323 of the 1999 Regular Session of the Louisiana Legislature are unconstitutional. On August 1, 2000, the LPFA filed an amended petition, seeking declaratory and injunctive relief with respect to Act 11 of the 2000 Second Extraordinary Legislative Session. The LPFA also sought to enjoin defendant from enforcing these Acts.
Both parties moved for summary judgment, and following a hearing, the district court denied defendant's motion, but granted the LPFA's request for a permanent *293 injunction and declaratory relief and declared unconstitutional Acts 915, 1238, and 1323 of the 1999 Regular Session of the Louisiana Legislature, as well as certain portions of Act 11 of the Second Extraordinary Session of 2000. The district court made the following findings:
1. The LPFA is not a political subdivision of the state.
2. The LPFA's assets are not public funds.
3. The trust is a binding contract between the state and LPFA.
4. The contract can only be amended by approval of two-thirds of the Board of Trustees, the governor, and two-thirds of the members of the legislature.
5. Act 1238 of 1999 is not confined to a single object and was amended to add non-germane material.
6. Act 915 is not broader than its title.
7. The Acts at issue "are impairments of the Indenture of Trust and impermissibly impairs the obligation of a contract in violation of [La. Const. Art. I, § 23], as the cited Acts remove authority over the budget, changes the method of submitting prospective members to the governor, appropriates LPFA funds, and terminates all present trustees in clear violation of the specific provisions of the trust."
8. The portion of Act 11 of the Second Extraordinary Session of 2000 that appropriates $5,000,000 for the Economic Development Awards Program, provided that the LPFA sends that same sum to the State Treasury and if such revenue is incorporated into the official forecast for the FY 2000-2001 by the Revenue Estimating Conference violates La. Const. Art. III, § 16(A) because it appropriates funds under the heading of contingencies.
The State filed an appeal directly with this court under La. Const. Art. V, § 5(D), which provides that a case shall be appealable to the supreme court if a law or ordinance has been declared unconstitutional.

DISCUSSION

La. Const. Art. I, § 23
The district court found that Act 1238 violates La. Const. Art. I, § 23 because the Act impairs the Indenture of Trust by changing the number of trustees, changing the method of submitting prospective trustees to the governor and terminating all present trustees. The court further concluded that Acts 915 and 1323 of 1999 impair the Indenture by removing the trustees' authority over the budget. Additionally, the district court found that Act 11 of the Second Extraordinary Session of 2000 violates Art. I, § 23, as it appropriates LPFA funds.
La. Const. Art. I, § 23 prohibits the enactment of laws impairing the obligations of contracts.[5] The inhibitions found in Article I, § 23 of the Constitution are protections for the citizens and not for the state. Rousselle v. Plaquemines Parish School Bd., 93-1916 (La.2/28/94), 633 So.2d 1235. This state may constitutionally pass laws waiving or impairing its own rights or those of its subdivisions, as long as private rights are not infringed. Id.
The LPFA argues that it is a private citizen, rather than a governmental entity, therefore, it is entitled to enjoy the benefits afforded to private citizens under La. Const. Art. I, § 23. Conversely, the *294 state asserts that the LPFA is not a private citizen. Rather, it is a public trust empowered to act for public purposes.
Thus, we must determine whether the LPFA is a private citizen or a public entity. To do so, it is necessary to review the history of the LPFA and its origin.
In the early 1970's, Louisiana, like many other states, faced a dilemma: how to finance public improvements for the utility and convenience of the public, without violating the Louisiana constitution[6] and revised statutes,[7] which prohibited political subdivisions from incurring debt unless authorized to do so by at least a majority of the electorate authorized to vote for a particular proposition. See Rolfe H. McCollister & James S. Holliday, Jr., Public Trusts Act in Louisiana: A Practical Approach to a Continuing Problem, 20 La.Bar J. 147 (1972). To enable the state to finance these public improvements without going to the taxpayers for funds, the Legislature enacted the Louisiana Public Trust Code, LSA R.S. 9:2341 et seq.
The LPFA was created pursuant to Public Trust Act, Act 135 of 1970, now La. R.S. 9:2341 et seq. Trusts created under Act 135 may be created by written trust instruments or by will. In the former, the written instrument must be subscribed by the grantor with the same formalities required for the creation of private trusts under the Louisiana Trust Code. Before the trust can become effective, it must be accepted by the governor, if the state be the beneficiary or by the governing body of any other public beneficiary. Upon acceptance, the written instrument creating the trust, together with the endorsement of the written acceptance, must be recorded.[8] Acceptance of the trust constitutes a binding contract between the State of Louisiana and the grantor for the acceptance of the beneficial interest in the trust property by the designated beneficiary.
The LPFA provides funding for the furtherance and accomplishment of any authorized public function or purpose of the State of Louisiana, or of any parish, municipality, political or governmental subdivision or any other governmental unit in the state.[9] The state does not provide funding for the LPFA, as its funding is primarily derived from application and closing fees from the issuance of bonds and from investment earnings. Although the LPFA is not a "governmental unit,"[10] it is subject to state laws regarding public records, open meetings, and public bids, bond validation procedures, and its trustees are subject to the Louisiana Code of Ethics. The LPFA is also subject to legislative audit.[11]
*295 An examination of the origins of Louisiana's public trust law reveals that its purpose, background and history were based on Oklahoma law.[12] The Public Trust created by the Oklahoma statute is a modern form of the traditional trust relationships of the active trust and the charitable trust. McCollister and Holliday, supra. An active trust is an instrumentality of property ownership and administration, and a charitable trust is one in which the beneficiary is a governmental entity or in which the purpose of the trust is to implement public welfare or convenience. Id. This combination of the active and charitable trusts is well imbedded in the common law as a governmental trust for the performance of functions of government involving its ownership of property. Id., citing Statutes of Charitable Uses, 43 Eliz. 1, c. 4 (1601).
The Oklahoma statute defining active trusts provides that Express Trusts may be created in real or personal property with power in the trustees to administer such property as fully and completely and absolutely as an individual owning such property might do. Holliday and McCollister, supra. The characteristics of a charitable trust are the expression of a definite charitable purpose and the indefiniteness of the beneficiaries. The fact that the beneficiary is a governmental entity or unit makes the trust no less charitable since a governmental trust may forward social interest by requiring the trustees to perform certain governmental functions, instead of by aiding existing governmental agencies in carrying on their activities. Hence, a trust to furnish money to a government for its general governmental purposes is charitable, since all the objects of the particular government must be of widespread social interest and the ultimate beneficiariesthe publicare anonymous and indefinite. Id., citing 2A Bogert, Trusts and Trustees, 170, Sec. 378(193); Board of County Commissioners, Okla. Sup.Ct., 285 P.2d 1034 (1955).
The process of creating the Oklahoma "public trust" involves a gift to a governmental entity. The funds originally donated to the trust and the trust estate that the trustees are authorized to accumulate do not begin with public funds, in revenue from taxation or in the operation of the governmental entity itself. McCollister and Holliday, supra. The trust provides for the welfare and benefit of the public without the necessity of any governmental funds being extended and the trustees are directed to pay to the beneficiarya government entityany surplus funds accruing from the operation of the trust facility thereby reducing the tax burden to the public. Id. The fact that the public trust may borrow money does not affect the governmental beneficiary since no public trust may be terminated while there exist any outstanding contractual obligations chargeable against the trust property. Id.
According to Holliday and McCollister, the Oklahoma public trust statute provided generally that express trusts may be created in real or personal property with the *296 state or any county, municipality, political or governmental subdivision or agency as beneficiary, the purpose of which may be the furtherance of any proper or authorized function of the beneficiary. Property of the beneficiary may be leased to the trust by the beneficiary after it has accepted the beneficial interest trust. The statute further provides that the trust instrument is controlling as to the appointment, succession, powers, duties, term and compensation of the trustees, and where the instrument is silent the general trust laws of Oklahoma govern. However, the statute specifically provides that the trustees are "an agency of this state and the regularly constituted authority of the beneficiary" for the performance of the public purposes for which the trust is created and that the trustees and the beneficiary are expressly absolved of any personal liability in the execution of the trust, any liability for acts, omissions or obligations being expressly limited to recovery from the trust estate." Id.
It is interesting to note that the term of the trust may be for the entire existence of the beneficiary or such shorter term as the trust instrument may provide. However, the trust may be terminated earlier by agreement of all the trustees and the governing body of the beneficiary with the approval of the governor, although such early termination is forbidden if there are any outstanding contractual obligation which might become an obligation of the beneficiary. Id.
Like the Oklahoma Statute, other states have passed laws which sanction trusts for the benefit of state or local governments in order to assist them in performing their functions in general, or in rendering particular types of public services. In Arkansas, for example, a statute authorizes express trusts of real or personal property for the state or a political subdivision, agency or county as the beneficiary to enable the beneficiary to carry out its proper functions. The trust gift is not effective until accepted by the beneficiary, and if the instrument does not name a trustee or give the named trustee trust powers, general state law is to control in the matter. In such case, the court will appoint a trustee, and if there are no statutory powers given, trustees will give the appointed trustee such powers as are necessary to carry out the trust. The trust is exempt from tax and may be amended by the trustee and the body or authority having the power to accept the beneficial interest.[13]
The New Mexico[14] and Nevada statutes are somewhat similar to Oklahoma, Arkansas and Louisiana. In Nevada the trustee appointed by the gift instrument is described as an agency of the state.[15] In Colorado, a public trustee is appointed by the governor of the state for each county. The public trustee's function is limited to real estate and the exercise of all powers conferred by the deeds of trust, including the power to execute and release deeds, make sales upon default and issue certificates of sale.[16] In Hawaii, a public land trust is created by statute and provides that the proceeds from the sale of public lands are to be held as a public trust for the support of schools.[17] There are numerous other examples of "public trusts" *297 created by statute[18] or enforced by the courts as public or charitable trusts.
Like Oklahoma, under the Louisiana's original Public Trust Act, the trustees were deemed to be an agency of the state and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created. The Act also provided that trustees and beneficiaries were not personally liable for the performance of the trust or in operating the trust property. However, in 1976, the legislature amended the LSA R.S. 9:2344, deleting the designation as a "state agency."[19]
A review of the history of litigation involving the LPFA reveals that in some instances, the LPFA has argued that it is not a "governmental unit," and in others, it has contended that it is a "state agency."
In Harris v. Trustees of Louisiana Public Facilities Authority, 358 So.2d 958 (La. App. 1 Cir.1977), decided after the amendment which deleted the LPFA's designation as a state agency, a Louisiana resident and taxpayer filed suit against the Board of Trustees of the LPFA, challenging the validity of certain actions taken by the LPFA in authorizing bonds to be sold to fund facilities and equipment for a hospital. The trial court considered the specific issue of whether the summary procedures of the Bond Validation Act, LSA R.S. 13:5121, et seq. applied to the LPFA, so as to make its appeal untimely. The court concluded that the Bond Validation Act was inapplicable because, in part, the LPFA is not a "governmental unit," as defined by the Bond Validation Act.[20] The court of appeal affirmed the trial court's finding.
The following year, the same plaintiff challenged the constitutional validity of the creation of the LPFA. In Harris v. Trustees *298 of Louisiana Public Facilities Authority, 356 So.2d 1039 (La.App. 1 Cir.1977); writ denied, 357 So.2d 558 (La.1978), the court of appeal held that the LPFA is a "public corporation," and quoted the trial court as follows:
It is clear that a public trust authority created under the Public Trust Act is neither a political subdivision of the State nor a municipal corporation. It is a unique creature of the Legislature designated as a "public corporation" in R.S. 9:2341. It is a corporation created by the Legislature and empowered to act for public purposes.
Id. at 1041-42.
However, in Benton, Benton & Benton v. Louisiana Public Facilities Authority, 897 F.2d 198 (5th Cir.1990); cert. denied, 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717, the plaintiff filed suit against the LPFA, alleging that the LPFA engaged in antitrust violations in its hiring of counsel. For the purpose of enjoying tort immunity, the LPFA asserted that it was a state agency. Both the district court and the Fifth Circuit agreed with the LPFA and held that the entity is, in fact, "a public agency fulfilling a public function for purposes of evaluating coverage under the Sherman Act." Id. at 200.
It is difficult to fathom that the legislature would create an entity for the benefit of the public, subject that entity to state laws regarding public records, open meetings, and public bids, as well as to legislative audit, if the legislature did not intend to regulate its own creation. Therefore, we conclude that the LPFA, a public corporation, as defined by the statute and created for a diversity of public purposes, cannot be deemed a private citizen. We hold that the LPFA is a public entity, subject to legislative regulation, and, as such, it is not protected by the Louisiana Constitution. Accordingly, the judgment of the trial court, declaring that the Acts at issue violate La. Const. Art. I, § 23 is reversed.

La. Const. Art. III, § 15(A) and (C)
The legislative power of the state is vested in the legislature. La. Const. Art. III, § 1. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature to enact such a statute. Board of Com'rs of Orleans Levee District v. Dept. of Natural Resources, 496 So.2d 281 (La.1986). Laws enacted by the legislature are presumed to be constitutional, and the constitutionality of statutes should be upheld whenever possible. State v. Muschkat, 96-2922 (La.3/4/98), 706 So.2d 429. Further, "it is not enough [for a person challenging a statute] to show that the constitutionality [of the statute] is fairly debatable, but, rather, it must be shown clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute." Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, & Citizens of the State of Louisiana, 529 So.2d 384, 388 (La.1988), citing Ancor v. Belden Concrete Products, Inc., 260 La. 372, 379, 256 So.2d 122 (1971) (other citations omitted).
The trial court found that Act 1238 violates La. Const. Art. III, § 15(A) because it is not confined to a single object, and it violates La. Const. Art. III, § 15(C) because it was amended to add non-germane material. The LPFA argues that the Act is unconstitutional because, for the first time, the Act authorizes public trusts "whose sole beneficiary is a hospital service district" to "utilize the sole source purchasing provisions as provided in R.S. *299 39:1597." The LPFA contends that, when Senate Bill 1112, which became Act 1238 of 1999, was originally introduced, it only concerned the issues regarding the number of trustees, their terms, and their method of appointment.
Act 1238 began as Senate Bill 1112. As introduced, the bill's title read:
AN ACT
To amend and reenact R.S. 9:2343(B) and to repeal R.S. 9:2343(C), relative to membership on the board of trustees of certain public trusts; to increase the number of trustees of certain public trusts; to provide for their appointment; to provide for the term of the trustees; and to provide for related matters.
The title was subsequently amended to read:
AN ACT
To amend and reenact R.S. 9:2343(B) and (E) and to repeal R.S. 9:2343(C), relative to public trusts; to increase the number of trustees of certain public trusts; to provide for their appointment; to provide for the term of the trustees; to authorize certain public trusts to utilize sole source procurement provisions of the Louisiana Procurement Code; and to provide for related matters. (Emphasis added).
The body of the bill was thereafter amended to conform to the amended title by adding the provision relating to hospital service district beneficiaries.
La. Const. Art. III, § 15(A) mandates that bills must be confined to one object.[21] The purpose behind the one object requirement is to restrict the content of a legislative bill so as to prevent a legislator from having to consider two or more unrelated matters when deciding how to vote on a single bill. Doherty v. Calcasieu Parish School Board, 93-3017 (La.4/11/94), 634 So.2d 1172; Bazley v. Tortorich, 397 So.2d 475 (La.1981). A bill is considered to have one object if the parts of the bill are reasonably related and have a natural connection to the general subject matter of the legislation. Id.
La. Const. Art. III, § 15(C) prohibits the legislature from amending a bill to make changes not germane to the bill as introduced.[22] The constitutional article providing that amendments to bills must be "germane" must be construed broadly, rather than narrowly, with the view of effectuating, not frustrating, the legislative process. Jones v. Board of Ethics for Elected Officials, 605 So.2d 1064 (La.1992). What is "germane" is that which is in close relationship, appropriate, relevant, or pertinent to the general subject. A. & M. Pest Control Service, Inc. v. LaBurre, 247 La. 315, 170 So.2d 855, (1965).
Act 1238 was originally introduced as Senate Bill 1112. The bill proposed to increase the number of trustees of public trusts from five to seven, give the governor the authority to appoint trustees, subject to Senate confirmation, and terminate the terms of the current trustees. The amended version of the bill added LSA *300 R.S. 9:2343(E)(2). LSA R.S. 9:2343(E)provides:
(1) All contracts of a public trust for construction, labor, equipment, material, or repairs shall be awarded to the lowest responsible bidder who has bid according to the contract plans and specifications as advertised, in full accordance with the Public Contract Law, Chapter 10 of Title 38 of the Louisiana Revised Statutes of 1950. However, this requirement shall not apply to projects or facilities of any public trust for the provision of industrial, manufacturing, and other economic development facilities and activities.
(2) In addition to the requirements provided for in Paragraph (1) of this Subsection, any public trust whose sole beneficiary is a hospital service district is hereby authorized to utilize the sole source purchasing provisions as provided in R.S. 39:1597.[23]
In Jones, supra, this court stated:
We are mindful that when a bill has been through the legislative process ..., it is to be expected that the legislation that emerges from such a process may differ from the original bill as introduced. However, when ... the bill as introduced and the amended version are found to be germane, a finding of constitutionality under article III, § 15(C) is required.
Jones at 1067-68.
Here, a fair reading of Act 1238 reveals that its object or purpose is to regulate public trusts by increasing the number of trustees of some public trusts, changing the trustees' method of appointment and the length of their terms, and authorizing some trusts to utilize the legislatively authorized sole source purchasing provisions. The body of the Act contains nothing that is unrelated to the accomplishment of the stated purpose. Moreover, all parts of the Act are reasonably related to the general subject matter of the legislation: the regulation of public trusts. Thus, we conclude that Act 1238 does not violate the "one object" requirement of the Louisiana Constitution.
Furthermore, both versions of Senate Bill 1112 serve to change the policy regarding the dynamics of public trusts. Both versions of the bill demonstrate a legislative attempt to regulate all public trusts for which the state is the beneficiary. Since both versions of the bill are related to the Code of Public Trusts and seek to add or change provisions to that Code, we conclude that the amended version of Senate Bill 1112 is relative or pertinent to the bill as introduced.
La. Const. Art. III, § 16(A)
Finally, the district court found that Act 11 of the Second Extraordinary Session of 2000 unconstitutionally appropriates LPFA funds under the heading of "contingencies." La. Const. Art. III, § 16(A) provides:
Specific Appropriation for One Year. Except as otherwise provided by this constitution, no money shall be withdrawn from the state treasury except through specific appropriation, and no appropriation shall be made under the heading of contingencies or for longer than one year.
*301 The legislature has absolute control over the finances of the state, except as limited by constitutional provisions. Woodard v. Reily, 244 La. 337, 152 So.2d 41 (La.1963). It is the legislature that decides how the branches and departments of government shall be funded from the public fisc. Quarles v. Jackson Parish Police Jury, 482 So.2d 833 (La.App. 2 Cir. 1986), writ denied, 486 So.2d 750 (La. 1986), citing State ex rel. Assistant Dist. Attys. Ass'n v. Theriot, 242 So.2d 49 (La. App. 1 Cir.1970), writ denied, 257 La. 275, 242 So.2d 247 (La.1971). Moreover, as discussed supra, it is not enough to show that the constitutionality of a legislative act is fairly debatable. It must be shown clearly and convincingly that the Legislature lacks the power to enact the statute. Board of Directors of Louisiana Recovery Dist., supra.
The LPFA contends that Act 11 violates La. Const. Art. III, § 16, which prohibits withdrawal of funds from the state treasury without a specific appropriation, which cannot be contingent. The state argues that the appropriation is similar to other appropriations which involve self-generated funds. The state explains that self-generated funds are not "withdrawn" from the state treasury because they are in the possession of the LPFA, a state entity.
We agree with the state's argument. While it is undisputed that the LPFA does not receive its funding from the state, Act 11 does not demonstrate a legislative attempt to control the funds of a private entity, as we have concluded that the LPFA is a public entity.
Moreover, while this court has never addressed this issue directly, in Henry v. Edwards, 346 So.2d 153 (La.1977), in discussing La. Const. Art. III, § 16(C), this court stated:
[I]nherent in the power of appropriation is the power to specify how the money shall be spent. Therefore, in addition to distinct "items" of appropriation, the legislature may include in an appropriation bill qualifications, conditions, limitations or restrictions on the expenditure of funds which would not be dealt with more properly in a separate bill.
Henry at 157.
In the case herein, the legislature simply appropriated the $5,000,000 from the state treasury for a specific use, with the proviso that the LPFA generated that amount. The $5,000,000 was not withdrawn from the state treasury, and no separate bill was introduced to address that specific appropriation. The legislature's action constituted a reasonable exercise of the legislature's absolute power to regulate funds to operate state government. Consequently, we conclude that Act 11 of the Second Extraordinary Session of 2000 does not violate La. Const. Art. III, § 16(A).

CONCLUSION
For the foregoing reasons, we hold that the LPFA is not protected by La. Const. Art. I, § 23, as it is not a private citizen. We also hold that Act 1238 does not violate La. Const. Art. III, § 15, as it does not violate the "one object" requirement, and the amended version of the bill is relative or pertinent to the bill as introduced. We also hold that Act 11 of the Second Extraordinary Session of 2000 does not violate La. Const. Art. III, § 16(A), as it was enacted pursuant to the legislature's power to regulate funds to operate state government. Accordingly, we reverse the district court's ruling that Acts 915, 1238, and 1323 of the 1999 Regular Session of the Louisiana Legislature, and Act 11 of the Second Extraordinary Session of 2000 are unconstitutional.
REVERSED.
*302 CALOGERO, C.J., concurs and assigns reasons.
KNOLL, VICTORY, J.J., concur in the result.
CALOGERO, Chief Justice, concurring.
I agree with the majority opinion. However, my reason for finding that Act 11 does not violate La. Const. Art. III, § 16(A) is as follows.
Art. III, § 16(A) provides that "no money shall be withdrawn from the state treasury except through specific appropriation, and no appropriation shall be made under the heading of contingencies or for longer than one year." In its brief, LPFA notes its failure to locate an "appellate opinion in which the portion of this provision prohibiting an appropriation `under the heading of contingencies' has been interpreted." LPFA argues that the appropriation of $5,000,000 is contingent upon two conditions: 1) The LPFA must transmit funds to the state treasury, and 2) the funds must be incorporated into the funds available for appropriation and expenditure by the Revenue Estimating Conference.
As argued by LPFA, the appropriation does appear to be contingent, i.e. contingent on the trust's collecting five million dollars, transmitting it to the state treasury, and incorporating it into funds available for appropriation and expenditure. However, that contingency does not seem to be what the constitution contemplates. I believe the purpose of this provision of the constitution, Art. III, § 16(A), is to prevent the legislature from 1) appropriating money from the state's general fund for more than a one year period, or 2) having contingencies trigger utilization of general fund monies. I do not think this section of the constitution is meant to stop the legislature from controlling expenditures of public authorities by requiring them to transmit money they have collected and place them in the state treasury to be returned to them by the legislature with stipulations.
NOTES
[*] Philip C. Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.
[2] LSA R.S. 9:2346(C) provides:

No later than sixty days before the beginning of its annual operating year, a public trust in which the state of Louisiana is a beneficiary shall submit its proposed annual operating budget to the Joint Legislative Committee on the Budget for its review and approval. The public trust may submit a proposed modification to its approved annual operating budget to the Joint Legislative Committee on the Budget for its review and approval at any time during the course of the annual operating year. At no time shall the public trust incur any expenditures or obligate itself for items which deviate from its approved annual operating budget.
[3] LSA R.S. 9:2343(B) provides:

(1) Notwithstanding the terms of any instrument creating a public trust in existence on August 15, 1999, or which creates a public trust after such date, any public trust that names the state of Louisiana or any state agency as a beneficiary shall have seven trustees appointed by the governor of the state of Louisiana, with consent of the Senate.
(2) The initial terms of the trustees shall be as follows: one member shall be appointed for a term of one year; two members shall be appointed for a term of two years; one member shall be appointed for a term of three years; two members shall be appointed for a term of four years; and one member shall be appointed for a term of five years. At the expiration of such initial term of each member and of each succeeding member's term, the governor shall appoint a successor who shall serve for a term of five years.
(3) Whenever a vacancy on such trust shall occur by death, resignation, or otherwise, the governor shall fill the same by appointment, and the appointee shall hold office during the remainder of the unexpired term. Each member shall hold office until his successor has been appointed and qualified.
(4) The trustees shall elect a chairman, a vice chairman, and a secretary-treasurer from their own members.
[4] LSA R.S. 9:2343(A) states, in relevant part:

[Trustees] shall serve without compensation but may receive per diem not to exceed two hundred dollars and be reimbursed for vouchered expenses incurred in the performance of their duties as trustees at the reimbursement rates applicable to the state officers as provided by rules and regulations promulgated by the commissioner of administration.
Prior to the amendment, the statute provided that trustees were to receive "reasonable" per diem "as may be determined by the trustees and be reimbursed for actual expenses" as opposed to "vouchered" expenses.
[5] La. Const. Art. I, § 23 provides:

No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.
[6] See 1921 La. Const. Art. 14, § 14; repealed in part; implemented in part.
[7] See LSA R.S. 39:501 et seq.; repealed by Acts 1977, No. 545, § 5.
[8] Recordation must take place with the Clerk of Court of each parish in which is located immovable property in which the trust has an interest, and also in each parish in which the trust property is located or the trust conducts its principal operations.
[9] The LPFA issues special obligation revenue bonds for eligible public and private projects throughout the state. In most instances, these bonds are exempt from federal and state income taxes. Generally, the bonds are not debts of the State of Louisiana.
[10] See Harris v. Trustees of Louisiana Public Facilities Authority, 358 So.2d 958 (La.App. 1 Cir.1977).
[11] LSA R.S. 9:2346 provides, in pertinent part:

A. Any public trust created hereunder shall be subject to the supervision of the legislative auditor of the state of Louisiana, to the same extent as the beneficiary thereof. Should the beneficiary thereof not be subject to the supervision of the legislative auditor, then provision shall be made in the instrument creating the trust for an annual, independent audit of the trust by a certified public accountant. Any such independent audit shall be subject to the authority of the legislative auditor to prescribe and approve the terms and conditions of such audit as set forth in the provisions of R.S. 24:513(A).
B. Any public trust created hereunder in which the state of Louisiana is the beneficiary shall be audited on an annual basis by the legislative auditor as provided in R.S. 24:513 and such public trusts shall annually provide sworn statements of revenues and expenditures in accordance with R.S. 24:514.
[12] See Okla. Stat. title 60 sections 176-80 (1971). The Louisiana act was copied almost verbatim from its Oklahoma counterpart.
[13] Ark. Stats. sections 28-72-201 to XX-XX-XXX.
[14] N. Mex. Stats. Ann. sections 46-4-1 to 46-4-9 ("State Beneficiary Trusts").
[15] See Nev. Rev. Stats. 36.062, 704.34.
[16] Colo. R.S. XX-XX-XXX to XX-XX-XXX.
[17] Haw. R.S. section 171-18.
[18] Mich. Comp. L.A. section 450.148 et seq.; 30 Me. R.S.A. section 4258 (municipally owned water or sewage disposal system; revenues to be held as trust funds for bondholders); Ohio Rev.Code sections 165.01 to 165.20 (Industrial Development Corporation bonds, issued by the state, a county or a municipal corporation may be secured by a trust agreement or indenture of mortgage between the issuer and a corporate trustee); Va.Code section 55.58.1, providing for a "security trust" of Virginia property pledged or mortgaged to secure payment of money or the performance of an obligation.
[19] The 1976 amendment to the section now provides:

A. No trustee or beneficiary shall be charged personally with any liability whatsoever by reason of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property; but any act, liability for omission or obligation of a trustee or trustees in the execution of such trust, or in the operation of the trust property, shall extend to the whole of the trust estate, or so much thereof as may be necessary to discharge such liability or obligation, and not otherwise.
B. Any obligations issued by a public trust under this Chapter shall not constitute or create any debt or debts, liability or liabilities or a loan of the credit of or a pledge of the faith and credit of the beneficiary of the state or any political or governmental unit thereof but shall be solely the obligation of the public trust.
[20] The Bond Validation Act, LSA R.S. 13:5121(2), defines the term as follows:

"Governmental unit" means the State of Louisiana, municipalities, parishes, parish and municipal school boards and districts, levee boards and districts, housing authorities, bridge authorities, community improvement agencies, redevelopment agencies, all other political subdivisions of the state, units of local government and nonprofit corporations created by or governed by the governing authorities of parishes or municipalities, any special service districts, such as water, sewerage, garbage and lighting districts created by or pursuant to legislative acts and any other districts, boards, authorities, and agencies of the State of Louisiana authorized to issue bonds.
[21] Const. Art. III, § 15(A) provides, pertinent part:

[Every] bill, except the general appropriation bill and bills for the enactment, rearrangement, codification, or revision of a system of laws, shall be confined to one object. Every bill shall contain a brief title indicative of its object.
[22] La. Const. Art. III, § 15(C) provides:

No bill shall be amended in either house to make a change not germane to the bill as introduced.
[23] LSA R.S. 39:1597 provides:

A contract may be awarded for a required supply, service, or major repair without competition when, under regulations, the chief procurement officer or his designee above the level of procurement officer determines in writing that there is only one source for the required supply, service, or major repair item.