CARTER, C.J.
| «¡This case poses a res nova legal question concerning the constitutionality of Act No. 433 of the 2008 Regular Session of the Louisiana Legislature (hereafter referred to as “Act 433”). Act 433 is commonly cited as the “Consumer Choice for Television Act” and is found in Chapter 10-A of Title 45 of the Louisiana Revised Statutes of 1950, comprising LSA-R.S. 45:1361-1378, including the specific provision at issue, LSA-R.S. 45.1365 B, that allows incumbent service providers the option to terminate existing cable or video service franchises issued by local governmental subdivisions. For the following reasons, we affirm the district court’s declaration that Act 433 is constitutional in its entirety •
FACTS AND PROCEDURAL HISTORY
In 2008, the Louisiana Legislature enacted Act 433 to increase competition in the cable television and video services *945 market, to offer consumers more choices, better prices and services, and to encourage economic development in Louisiana. See LSA-R.S. 45:1362 A. Act 433 became effective on August 15, 2008. Prior to Act 433, cable service providers[1] obtained franchises[2] from local governmental subdivisions [3] for authority to use public rights-of-way in order to provide/transmit their cable |4and video television services to customers. The various franchise agreements set forth the rights and responsibilities of each cable service provider, including the obligation to pay local governmental subdivisions a mutually agreed-upon percentage of the gross revenues from sales of cable services, and in some instances, to provide programming or channels for public, educational, and government (“PEG”) access programming.
Pursuant to the police powers reserved to the state by Article VI, Section 9 of the Constitution of Louisiana, the legislature enacted Act 433 to permit any cable service provider to apply for a uniform, nonexclusive, and nondiscriminatory state franchise to provide cable or video television services to designated municipalities or parishes to be served, according to a streamlined franchise procedure with the secretary of state, as opposed to a local governmental subdivision franchise. See LSA-R.S. 45:1362 B, C, & D and LSA-R.S. 45:1364. Act 433 also gave incumbent service providers[4] the option to apply for the state franchise after terminating their existing franchises with local governmental subdivisions. LSA-R.S. 45:1365 B. However, Act 433 specifically mandated that the incumbent service providers would remain subject to and obligated for any indebtedness, liability, or obligation that is accrued, due and owing to a local governmental subdivision at the time the incumbent service provider terminates the existing franchise previously issued by the local governmental subdivision. LSA-R.S. 45:1365 B(2).[5] Moreover, Act 433 requires *946 all service providers, | ¡¡including incumbents, to pay local governmental subdivisions a franchise fee and PEG access support, to be uniformly applied to all holders of state-issued franchise certificates. See LSA-R.S. 45:1366 and 1370.
Two days before Act 433 became effective, two non-profit corporations, the Police Jury of Louisiana, Inc. and the Louisiana Municipal Association (hereafter collectively referred to as “plaintiffs”), filed a joint petition for declaratory judgment, preliminary injunction, and permanent injunction against the State of Louisiana and Governor “Bobby” Jin-dal, in his official capacity, through Attorney General James D. “Buddy” Caldwell (hereafter collectively referred to as “defendants”), seeking to have Act 433 | (¡declared unconstitutional, in whole or in part, and seeking to enjoin the application and enforcement of Act 433. A few days later, two separate petitions of intervention were filed by BellSouth Telecommunications, Inc. d/b/a AT & T Louisiana and the Louisiana Cable & Telecommunications Association (hereafter collectively referred to as “interve-nors”). Defendants and intervenors were similarly aligned, maintaining the constitutionality of Act 433. On August 26, 2008, the district court issued an order combining and consolidating all of the matters for a trial on the merits, and further ordered that until such time as a ruling on the request for permanent injunction was made, the opt-in provision found in LSA-R.S. 45:1365 B was suspended and had no effect as to any franchise agreements in existence on or before August 15, 2008.
The matter went to a trial on the merits, and on January 15, 2009, the district court signed a judgment declaring the entirety of Act 433 to be constitutional, thus denying plaintiffs’ demands for injunctive and declaratory relief. Additionally, the district court lifted the suspension placed on the opt-in provision found in LSA-R.S. 45:1365 B and contained in its August 26, 2008 order, thereby freeing incumbent service providers to exercise any and all rights granted under Act 433. Plaintiffs devolutively appeal, asserting that the district court erred in concluding that Act 433 is constitutional in its entirety.
LAW AND ANALYSIS
The legislative power of the state is vested in the legislature. LSA-Const. art. Ill, § 1. The Louisiana Supreme Court described the exercise of legislative power as follows:
17[T]he legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature to enact such a statute. Laws enacted by the legislature are presumed to be constitutional, and the constitutionality of statutes should be upheld whenever possible. Further, “it is *947 not enough [for a person challenging a statute] to show that the constitutionality [of the statute] is fairly debatable, but, rather, it must be shown clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute.”
Louisiana Public Facilities Authority v. Foster, 01-0009 (La.9/18/01), 795 So.2d 288, 298 (quoting Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, and Citizens of the State of Louisiana, 529 So.2d 384, 388 (La.1988)) (citations omitted) (emphasis added).
In other words, if a statute is susceptible of two constructions, one of which would render it unconstitutional, or raise grave constitutional questions, the court will adopt the interpretation of the statute which, without doing violence to its language, will maintain its constitutionality. Nevertheless, the constitution is the supreme law of this state, to which all legislative acts must yield. When a statute conflicts with a constitutional provision, the statute must fall. SEMO, Inc. v. Board of Com’rs for Atchafalaya Basin Levee Dist., 07-2571 (La.App. 1 Cir. 6/6/08), 993 So.2d 222, 226-227 (citing City of New Orleans v. Louisiana Assessors’ Retirement and Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1, 12-13).
Furthermore, unless the fundamental rights, privileges, and immunities of a person are involved, there is a strong presumption in the law that the legislature in adopting a statute has acted within its constitutional powers. Board of Directors of Louisiana Recovery Dist., 529 So.2d at 387. The presumption is especially forceful in the case of statutes enacted to promote a public purpose. Id. The party attacking such a statute has the Rhigh burden of showing clearly that the legislation is unconstitutional, and any doubt must be resolved in favor of the legislation’s constitutionality. Id. Because Act 433 was enacted for the specific public purpose of promoting and encouraging economic development, increasing competition and providing consumers more choice, better prices, and better cable and video services, Act 433 is entitled to the strong presumption that the legislature acted within its constitutional powers. Thus, plaintiffs have a high burden of clearly and convincingly showing the constitution denies the legislature the power to enact Act 433.
Plaintiffs contend that Act 433, and more specifically LSA-R.S. 45:1365 B, violates article VII, section 15 of the 1974 Louisiana Constitution by releasing incumbent service providers, from obligations owed to local governmental subdivisions under existing franchise agreements. Louisiana Constitution article VII, § 15, provides, in pertinent part:
The legislature shall have no power to release, extinguish, or authorize the releasing or extinguishing of any indebtedness, liability, or obligation of a corporation or individual to the state, a parish, or a municipality.
The quoted language has been in our state constitutions since at least 1879. See historical notes for LSA-Const. art. VII, § 15; art. IV, § 13 of the 1921 constitution; art. 59 of the 1913 constitution; art. 59 of the 1898 constitution; and art. 57 of the 1879 constitution. See also McNamara v. Bayou State Oil Corp., 589 So.2d 1099, 1109 (La.App. 2 Cir.1991), writ denied, 592 So.2d 1335 (La.1992).
Whether a legislative act is constitutional is a question of law, to be reviewed de novo, without deference to the legal conclusions of the district court. City of New Orleans v. Louisiana Assessors’ Retirement and Relief Fund, 986 So.2d at 12; Cleco Evangeline, LLC v. Louisiana Tax Com’n, 01-2162 (La.4/3/02), 813 So.2d 351, 353.
*948 Defendants and intervenors point out that plaintiffs have not provided any authority that LSA-Const. art. VII, § 15 precludes the legislature from releasing contractual obligations that might be due the state, a parish, or a municipality in the future. To the contrary, defendants and intervenors maintain that the jurisprudence interpreting LSA-Const. art. VII, § 15 precludes the release of financial obligations that are accrued, due, and owing, with no limitation on obligations that would accrue sometime in the future. See Unwired Telecom Corp. v. Parish of Calcasieu, 02-839 (La.App. 3 Cir. 2/5/03), 838 So.2d 854, 859, aff'd in part and rev’d in part on other grounds, 03-0732 (La.1/19/05), 903 So.2d 392, 398 and 407 (on rehearing) (where LSA-Const. art. VII, § 15 was analyzed in the context of a statute found to be unconstitutional because it extinguished existing tax obligations that were owed prior to the enactment of the new law.)[6] We agree with defendants and intervenors, and find that plaintiffs have not clearly and convincingly shown that the constitutional aim of LSA-Const. art. VII, § 15 was to deny the legislature the power to release future obligations owed to the state, a parish, or a municipality such as the local governmental subdivisions affected by Act 433. The constitutional issue arises only if the statute releases obligations that are due and owing to the state, a parish, or a municipality prior to the enactment of the statute, not | inafter. Cf. State ex rel. Tulane Homestead Ass’n v. Montgomery, 185 La. 777, 171 So. 28, 30-31 (1936); State ex rel. McGregor v. Diamond, 167 So. 760, 770 (La.App. 2 Cir.1936).
The legislature was obviously aware of the constitutional constraint preventing the release of accrued, due, and owing obligations addressed in the jurisprudence interpreting LSA-Const. art. VII, § 15, because it specifically mandated in several places in Act 433 that incumbent service providers “shall remain, under the terms and conditions of the terminated franchise, subject to and obligated for any indebtedness, liability, or obligation that is accrued, due, and owing to a local governmental subdivision at the time the incumbent service provider terminates the existing franchise previously issued by said local governmental subdivision.” LSA-R.S. 45:1365 B(2) (emphasis added). See also LSA-R.S. 45:1362 E and LSA-R.S. 45:1365 B(3). The legislature further expressly stated that “[njothing in this [Act 433] shall be construed to release an incumbent service provider exercising the option to terminate from any such accrued, due and owing indebtedness, liability, or obligation.” LSA-R.S. 45:1365 B(2). Additionally, in a section entitled “Legislative findings,” the legislature specifically provided:
“The Legislature of Louisiana does not intend that the “opt-in” right afforded by [LSA] R.S. 45:1365 shall release any indebtedness, liability or obligation that is owed to the state, a parish, or a municipality at the time that an incumbent service provider exercises those rights. If a court should determine that [LSA] R.S. 45:1365 has the effect of releasing an indebtedness, liability or obligation in contravention of [a]rticle VII, [s]ection 15 of the Constitution of Louisiana, then it is the intent of *949 the legislature that [LSA] R.S. 45:1365 be severed from this [Act 433] so that the remaining provisions can remain in full force and effect.”
LSA-R.S. 45:1362 E (emphasis added).
InThe function of the court in construing a constitutional provision is to ascertain and give effect to the intent of the people who adopted it. Radiofone, Inc. v. City of New Orleans, 93-0962 (La.1/14/94), 630 So.2d 694, 698. In seeking to discover the constitutional intent, the court is generally guided by the same rules it follows in interpreting laws and written instruments. When a constitutional provision is clear and unambiguous, and its application does not lead to absurd consequences, it must be applied as written without further interpretation in search of its intent. Every provision must be interpreted in light of the purpose of the provision and the interests it furthers and resolves. When the provision is susceptible of different meanings, it is interpreted by examining the context and the text in which it occurs as a whole and by giving it the meaning that best conforms to its purpose. Provisions on the same subject matter are interpreted in reference to each other. Id.; see also LSA-C.C. arts. 9-13. And when analyzing legislative history, it is presumed the legislature’s actions in crafting a law were knowing and intentional. M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La.7/1/08), 998 So.2d 16, 27.
Interpreting LSA-Const. art. VII, § 15 with these precepts in mind, it is clear that the opt-in provision in LSA-R.S. 45:1365 B was intended to allow incumbent service providers the right to terminate existing local franchises in order to equally compete and participate in the state franchising procedure, while concurrently preventing the release of debts, liabilities, and obligations that had already accrued, and were due and owing by the incumbent service providers to the local governmental subdivisions. The constitutional prohibition is silent regarding the release of future obligations that have not yet accrued and are not yet due and owing. The words | ^“indebtedness” and “liability” used in the text of LSA-Const. art. VII, § 15, reference that which is already accrued and owing.[7] Only the term “obligation” could possibly apply in the future, but an obligation in this sense would be a contractual obligation that is not afforded constitutional protection since the obligation is owed to the state, in this case, in the form of a local governmental subdivision.[8] Because the legislature specifically considered and clearly provided that Act 433 was not intended to release any indebtedness, liability, or obligation that is owed to the state, a parish, or a municipality at the time that an incumbent service provider exercises its right to “opt-in” to a state franchise, we find that the legislative limitation in LSA-Const. art. VII, § 15 is not violated.[9] In our view, plaintiffs failed *950 to meet their high burden of clearly and convincingly refuting the presumed constitutionality of Act 433, applied as plainly written; therefore, we hold that Act 433 is constitutional.
1 ^CONCLUSION
Considering the foregoing, we find that the district court did not err in declaring the entirety of Act 433, including specifically LSA-R.S. 45:1365 B, to be constitutional and in denying plaintiffs’ demands for injunctive and declaratory relief. The district court judgment dated January 15, 2009, is hereby affirmed. Costs of this appeal are equally assessed to plaintiffs/appellants, the Police Jury Association of Louisiana, Inc. and the Louisiana Municipal Association.
AFFIRMED.
GUIDRY, J., concurs.

. Act 433 defines a "cable service provider" to mean any person or entity that provides cable service (the one-way transmission of video programming to subscribers) over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or who otherwise controls or is responsible for the management and operation of such system. See LSA-R.S. 45:1363(1) and (2).

. Act 433 defines “franchise” to mean authorization issued by a franchising authority for the construction and operation of a cable system, or other wireline facilities used to distribute video programming services in the public rights of way LSA-R.S. 45:1363(6).

. Act 433 defines “local governmental subdivision” to mean any parish or municipality. LSA-R.S. 45:1363(10).

. An “incumbent service provider” means any cable or video service provider providing cable or video service in a particular municipality or unincorporated area of a parish on August 15, 2008, the effective date of Act 433. See LSA-R.S. 45:1363(9).

. Louisiana Revised Statutes 45:1365 B allows an "opt-in” right, specifically providing as follows:
B. Any incumbent service provider shall have the option to terminate an existing franchise previously issued by a local governmental subdivision and may instead offer cable service or video service in such local governmental subdivision under a certificate of state franchise issued by the secretary of state in accordance with the provisions of [LSA] R.S. 45:1364, provided the following requirements are satisfied by any such incumbent service provider;
(1) An incumbent service provider exercising its termination option shall file a statement of termination with the secretary of state in the form of an affidavit containing the information required by [LSA] R.S. 45:1364(B) and submit copies of such filing with any affected local governmental subdivision. Termination of existing franchises is effective immediately upon the effective date of the certificate of state franchise issued by the secretary of state.
(2) An incumbent service provider shall remain, under the terms and conditions of *946 the terminated franchise, subject to and obligated for any indebtedness, liability, or obligation that is accrued, due, and owing to a local governmental subdivision at the time the incumbent service provider terminates the existing franchise previously issued by said local governmental subdivision. Nothing in this Chapter shall be construed to release an incumbent service provider exercising the option to terminate from any such accrued, due and owing indebtedness, liability or obligation.
(3) An incumbent service provider that elects to terminate its existing franchise for a local governmental subdivision shall remain subject to the contractual rights, duties, and obligations incurred by the incumbent service provider under the terms and conditions of the terminated local franchise that are owed to any private person, including a subscriber. [Emphasis added.]

. Jurisprudence interpreting LSA-Const. art. VII, § 15 is sparse. In general, the few cases discussing this constitutional provision focus on the unconstitutionality of various tax collection statutes that release or extinguish tax liability or debt found to be due and owing prior to the effective date of each statute. See Unwired, supra; Fontenot v. Hurwitz-Mintz Furniture Co., 200 La. 210, 7 So.2d 712, 716 (1942); McNamara, 589 So.2d at 1112.

. Mirriam-Webster’s Collegiate Dictionary, 590 (10th ed.1995), defines “indebtedness” as “something (as an amount of money) that is owed [.]” Similarly, “liability” is defined as “something for which one is liable ... [a] pecuniary obligation ... debt[.]” Id. at 670.

. See LSA-Const. art. I, § 23, which prohibits the enactment of laws impairing the contractual obligations of private citizens, but not those of the state or local governmental subdivisions. Louisiana Public Facilities Authority, 795 So.2d at 293; see also Morial v. Smith & Wesson Corp., 00-1132 (La.4/3/01), 785 So.2d 1, 13, cert. denied, 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 262 (2001).

. Further, we find that Act 433 does not violate LSA-Const. art. I, § 23, because the legislature may constitutionally enact laws that waive or impair the state's own rights or those of its governmental subdivisions, as long as private rights are not infringed Louisiana Public Facilities Authority, 795 So.2d at *950 293; Rousselle v. Plaquemines Parish School Bd., 93-1916 (La.2/28/94), 633 So.2d 1235, 1246-1247. The plaintiffs and the local governmental subdivisions in this case are not private citizens. Therefore we find no error in the district court's analysis and reasoning regarding the application of LSA-Const. art. I, § 23. We likewise find no merit to the plaintiffs’ argument that the district court’s reasons are inconsistent with the final judgment. In both, the district court clearly ruled that Act 433 is constitutional.